(Decided November 19th, 1896).

---

# THE STATE OF MARYLAND *vs.* THE SECOND NATIONAL BANK OF HOBOKEN.

*Tax on Auction Sales—Resale Upon Default of the First Purchaser.*

When property is sold under a decree, part of the purchase money being paid, and upon the failure of the purchaser to pay the balance, a resale is ordered, the State is not entitled, under Local Code, Art. 4, secs. 74-80, to the tax on the amount bid at the original sale, and also to a tax on the amount bid at the resale.

The provision in the said statute, that property sold at public auction shall be subject to the tax every time it shall be "struck off," imposes the tax only on consummated sales and not on ineffectual efforts to sell.

When a resale of property is ordered by a Court under the original decree of sale, such resale is not a new and independent proceeding, but is only a means of realizing the money which the original, but defaulting purchaser failed to pay.

Appeal from an order of the Circuit Court of Baltimore City, (DENNIS J.), sustaining the exception filed by the appellee, the Second National Bank of Hoboken, to the allowance of $341.00 as State tax for auction duties upon the first sale of the property made in this case. The record shows that this suit was instituted for the sale of mortgaged

premises in the city of Baltimore, on October 7th, 1895. On November 20th, 1895, the property was sold to Daniel V. Manning for the sum of $68,200. This sale was finally ratified and confirmed by the Court on January 13th, 1896. The purchaser deposited $1,000 on account of the purchase money at the time of sale, but after the ratification of the sale, failed to comply with the terms of the sale. The trustees thereupon filed a petition for the resale of the property at the purchaser's risk, on February 3d, 1896, and the property was subsequently resold at public auction for the sum of $55,300. This sale was also ratified and confirmed by the Court. The auditor, in his accounts, allowed the State tax for the city of Baltimore upon both the original sale and the resale. The appellee excepted to the allowance of the State duty on the first sale, amounting to $341.00, and the Court below sustained the exceptions by its order of May 18th, 1896. From this order this appeal has been taken by the State of Maryland.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, ROBERTS and BOYD, JJ.

*George R. Gaither, Jr.,* for the appellant.

It will be noted that by the express terms of the statute, the duty is payable upon all real estate, "*each and every time* they,' or any of them, shall be struck off." It is difficult to see, therefore, why this duty should not be paid in the case at bar, upon both the sale and the resale of the property. They are both distinct and separate transactions under the universal decisions of this State. In order that this may appear most clearly, it will be necessary to refer to the decisions of our Courts as to what is the effect of a resale. These decisions show that it is completely distinguished from the original sale. In the first place, the only ground upon which a Court of Equity can order a resale of property upon the purchaser failing to pay the purchase money, is under the Court's equitable lien already acquired. *Mullikin* v. *Mullikin,* 1 Bland, 359. When land

is resold at the risk of the defaulting purchaser, any surplus arising from the second sale belongs to such purchaser or his representatives, and not to the former owners. *Lee* v. *Stone*, 5 Gill & Johnson, 1 ; *Stephens* v. *Magruder*, 31 Md. 168. When property is resold at the risk of a purchaser who has paid a part payment, there is no forfeiture of such payment. *Brundige* v. *Morrison*, 56 Md. 507. " In the case of a resale at the purchaser's risk, clerk's costs, auditor's fees, expenses of *both the original sale and the resale*, and commission to the trustee on the full amount of the resale, are to be first paid. But the trustee will not be allowed commission on any sum received on account of the original sale." *Gordon* v. *Matthews*, 30 Md. 235.

It is apparent from these decisions that our Courts have always regarded the resale as an entirely distinct transaction from the original one, and as will be noticed from the case of *Gordon* v. *Matthews, supra,* the expenses should be allowed for both the original sale and the resale. Such being the case, upon what principle can this statute be construed so as not to apply to both sales ? This is, of course, not a case similar to a sale by a Court of Equity after a former sale has been set aside by the Court. Of course, in such cases, under every principle of law, the first sale is a nullity. The theory upon which it is set aside is that the agents of the Court have not acted properly or wisely in making the attempted sale. In such cases there is only one sale. Such is a very different matter from a sale made on account of the purchaser's default, which is only made by the same Court because of its authority to enforce its equitable lien, and where the purchaser would get the benefit of any advance in price should the same occur on the resale. It could not be questioned that had the original purchaser given a mortgage for the balance of the purchase, and that mortgage been subsequently foreclosed by another proceeding, that the State would be entitled to its auction duties upon both sales. So, again, if the purchaser at the original sale, finding it impossible for him to raise the pur-

chase money, had made a sale of the property at public
auction, he could not avoid the payment of this auction tax
of this second sale upon the ground that the property had
already been sold to him by decree of Court. The lan-
guage of the statute is most precise in requiring the pay-
ment to be made *each and every time that the property is
struck off.* What difference, then, can it make, in applying
the terms of this statute, as to whether a subsequent sale
was made by the same Court in furtherance of its special
powers or made by the purchaser himself of his own voli-
tion? Moreover, no one could object that his rights had
been infringed upon by the payment of the tax. Surely
the defaulting purchaser could not object to an expense for
which he was directly responsible, and the remedy of any
party in interest for any deficiency in the second sale is
against the purchaser. The deposit, after the payment of
expenses, belongs to the purchaser, and the utmost that
equity would be called upon to do would be to impound it
in the hands of the trustees. If there are two sales, the
plain language of the statute must apply, and the duties
should be allowed upon each. Moreover, the statute in
question is a revenue law for raising revenue. It is not
penal in its nature; and, therefore, should be construed
according to its fair intention and language, and in some
respects liberally, in order that it may be made effective.
Revenue statutes are not to be regarded as penal, and there-
fore to be construed strictly. They are remedial in their
character and to be construed liberally, to carry out the
purposes of their enactment. *United States* v. *Hodson*, 10
Wallace, 359; *Sedgwick on Construction of Laws* (2d ed.),
288.

*Julian J. Alexander* (with whom was *Charles W. Nash*
on the brief), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The Code of Public Local Laws, Art. 4, relating to Bal-
timore City, contains the following provisions: "Sec. 74.

All real estate   *   *   which shall at any time be exposed to sale at public auction within the city of Baltimore   *   *   * shall be subject, each and every time they or any of them shall be struck off, to duties at the following rates."  " Sec. 75.  All real estate,   *   *   goods and effects of deceased persons or insolvent debtors or property sold under an order or decree of any Court, at the rate of fifty cents on every one hundred dollars."  " Sec. 77. The duties shall be calculated on the sums for which the property or goods so exposed to sale shall be respectively struck off, and shall, in all cases, be paid by the person making the sale." " Sec. 79. The duty imposed on all sales of land, tenements and hereditaments or of any interest therein, at public auction in the city of Baltimore, shall be a lien on the said property when sold as aforesaid."  " Sec. 80. Every purchaser of lands, tenements or hereditaments, or of any interest therein, purchased at public auction in the city of Baltimore, shall be bound to pay the auction duty on such sale and be entitled to claim the said payment as a credit on his purchase as aforesaid."

In October, 1895, a decree was passed by the Circuit Court of Baltimore City for the sale of certain mortgaged premises, and the sale was made in November following by the trustees named in the decree, and this sale was finally ratified in January, 1896.  The purchaser paid to the trustees the sum of one thousand dollars when the property was knocked down, but he defaulted on the balance of the purchase money, and in February a petition was filed for authority to resell the property at the purchaser's risk. With the consent of the purchaser a resale was ordered and was subsequently made and ratified.  The price realized at the resale was less than the amount bid at the original sale. An audit was then stated wherein the duty of one-half of one per cent. on the gross amount of the original sale was allowed under sec. 74 of Art. 4 of the Code of Public Local Laws ; and wherein, also, a further allowance was made of one-half of one per cent. on the gross amount of the pur-

chase money bid at the resale. To the allowance of the duty on the sum bid at the original sale the Second National Bank of Hoboken, a creditor of the mortgagor, filed an exception, which the Court below sustained, except as to the sum of five dollars, that being the amount of the one-half of one per cent. on the sum of one thousand dollars paid to the trustees by the first purchaser. From the order sustaining the bank's exception, the State claiming a duty on the amounts bid at both the original sale and the resale, has appealed.

The question thus presented is a narrow one. Concisely stated it is this: Is the State of Maryland entitled, under the statute quoted above, to a tax or duty on the sale originally made, which sale turned out to be ineffective because the purchase money never was paid, and also entitled to a further or additional tax or duty on the resale, which was ordered and was had merely to enforce the one that had not resulted in realizing the purchase money bid? We think the learned Judge below rightly solved this question against the claim of the State.

It is obvious the tax or duty is intended to be collected only when there has been a sale that is a consummated sale; and whilst under a judicial resale the property is in fact again put under the hammer, it is put there not as a new, distinct independent procedure, but as a means and solely as a means to realize the money which the original but defaulting purchaser failed to pay. The resale takes place under the original decree, supplemented by an order. It is made by the same trustees, in the same proceedings and with a view to pay off the same indebtedness for the payment of which the property was sold in the first instance, and the money realized by it is always applied precisely as would have been applied the money bid at the original sale had that money been paid by the first purchaser. The resale is simply an execution of the decree for a sale. Its very name imports that it is not such a new sale as to be a distinct proceeding.

When the statute declares that the tax shall be paid each and every time the property shall be " struck off," the term " struck off" must be understood in its usual and accepted sense and not in a narrow, contracted or literal one. " In common parlance and in the language of the auction room, property is understood to be ' struck off' or ' knocked down' when the auctioneer by the fall of his hammer or by any other audible or visible announcement signifies to the bidder that he is entitled to the property on paying the amount bid according to the terms of the sale." *Sherwood* v. *Read*, 7 Hill, 439. In all sales made under a decree in equity the Court is the vendor, acting for and in behalf of all the parties to the cause. The trustee is the mere agent of the Court, and the contract of sale is never regarded as consummated until it has received the sanction of the Court. *Schindel* v. *Keedy*, 43 Md. 413 ; *Cunningham et al.* v. *Schley et al.*, 6 Gill, 224. If a judicial sale is set aside it cannot be pretended the tax is payable on the amount bid when the property was, in a limited sense, " struck off," because, being set aside, though the property was struck off, there was, in fact, no sale. And if, even though the property has been " struck off" and the sale has been reported, the Court refuses to ratify the sale, there is, by reason of the refusal of the Court to sanction the sale, no sale at all ; then, the mere striking off of the property by the auctioneer does not, in a judicial sale at least, create a liability to pay the duty. A literal adherence to the words of the statute would require that the tax be paid every time the property might be " struck off" in judicial sales though the sales were set aside, if the interpretation of the term " struck off" insisted on for the State were adopted ; and as in such sales the Court is the vendor the tax would, under sec. 77, be payable, not out of the fund—because when the sale is vacated there is no fund—but by the Court—" the person making the sale." This obviously was never contemplated. The " each and every time " named in sec. 74, manifestly has reference to each and every time there is a completed and consummated sale and a payment of the purchase money.

The design of this legislation was to raise revenue by the imposition of a tax or duty on sales and not on ineffectual efforts to sell ; and hence the term " struck off" must be treated as signifying a consummated sale.   This seems to be clear from the other provisions quoted above from the Local Code. · The tax is required to be paid by the person making the sale and is declared to be a lien on the property sold.  The purchaser by sec. 80 has the right to deduct the tax from the purchase money, but not to deduct a tax due on some other antecedent purchase.   In the case at bar, if a double tax or duty were imposed its payment would in fact be thrown on a junior creditor.   The lien is given for the tax due and though the vendor is required to pay, it is a lien on the property, and may be discharged by the vendee out of the purchase money which he owes ; but the statute nowhere gives him authority to deduct from the purchase money the amount of the tax or duty on some other sale at which he was not the purchaser.

Concurring with the Court below, we affirm the order appealed from.

*Order affirmed.*

(Decided November 20th, 1896).