## SAMUEL F. HEBB et al.

### vs.

## AUGUSTINE S. MASON et al.

*Mortgages—Sale Under Power—Bond—Payment and Assignment.*

Trustees, or parties occupying in effect such a position, making a sale of property, are not justified in informing a possible bidder as to the amount of others' bids, or in entering into an agreement to sell to one at a named advance over what might be offered by others. ⋅ p. 348

One holding a mortgage, and also a judgment subsequent thereto, was justified in refusing to assign the mortgage to a representative of the mortgagors, offering to pay it, the holder of the mortgage offering to accept the amount of the mortgage and to release it. p. 350

An attorney selling under a power in a mortgage is not precluded from selling to the mortgagee, although one of his clients. p. 352

Code, art. 6, sec. 7, requiring a bond to be given before a sale under a power in a mortgage, does not invalidate a private sale, made after the filing and approval of a bond, merely because the bond was not filed before a previous offer of the property at public auction, at which time it was withdrawn, the property having been duly advertised, and the lack of a bond at that time not having apparently affected the bidding. pp. 353-357

*Decided April 26th, 1923.*

Appeal from the Circuit Court for Washington County, In Equity (WAGAMAN, J.).

Report of sale under a mortgage by Augustine S. Mason and Ellsworth R. Roulette, assignees. From a decree dismissing exceptions to the sale, Samuel F. Hebb and others, the mortgagors, appeal. *Affirmed.*

The cause was submitted on briefs to BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Scott M. Wolfinger* and *Elias B. Hartle,* for the appellants.

*Ellsworth R. Roulette* and *Augustine S. Mason,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Washington County dismissing exceptions filed by the appellants to a sale made by the appellees, who are assignees of a mortgage made by Samuel F. Hebb, Mary C. Hebb and Sarah E. Hebb to James Snyder, and ratifying the sale made to George H. Poffenberger.

If some of the allegations in the exceptions had been proven to be true, a court of equity would undoubtedly have been called upon to set aside the sale. They allege that the mortgagors are aged and infirm, being respectively about 76, 85 and 86 years of age, and that George H. Poffenberger, the purchaser named in the report, resided near them, well knowing their ages and infirmities, and designing to take advantage of them and profit by their ages and feebleness and pretending great friendship for them, inveigled them into signing a pretended lease, in the spring of 1921, for a term of five years, which they allege was fraudulently obtained, is illegal and void; that in procuring said lease the said Poffenberger was actuated by the belief that long before the expiration thereof, the deaths of one or all of said mortgagors or financial reverses sustained by them would force the sale of their farm and that in such event the fact that the farm was subject to such a long lease would greatly interfere with the sale of the same and its fair market value, and with great profit to himself; that he for several years past has designed to secure said farm unfairly, and has declared his intention to secure it; that he fraudulently procured a judgment against them

for two thousand dollars, given without consideration, and has brought suit against them for $1,627.40 additional, which is still pending; that in the autumn of 1921 some of their relatives made an investigation of their transactions with said Poffenberger and asked for an accounting, but he did not account and shortly thereafter brought the suit referred to above, his attorneys of record being the assignees of the mortgage. Then after a long statement about an effort to have the mortgage assigned to Scott M. Wolfinger, who was attorney for William E. Hebb, and an offer made by him, that part of the exceptions concludes by alleging

"that the said sale was made to the prejudice of the said mortgagors, against the rights of the said William E. Hebb, who was able and willing to pay more for said farm than the amount at which it is reported sold to the said George H. Poffenberger, and that said sale was unfairly made to the said George H. Poffenberger, pursuant to a design and purpose on the part of the said George H. Poffenberger and the said assignees that the said Poffenberger, and he only, should become the purchaser of said farm, to the great loss and prejudice of the rights of these exceptants."

In other exceptions, it is alleged that the sale was not fairly made, and was accomplished by intrigue and connivance on the part of Poffenberger; that the rights and interests of the mortgagors ought to be protected, and that William E. Hebb tenders and offers a larger sum than offered by any other purchaser and is able and willing to comply with the terms of sale; that the reported purchase price of $5,250 is not the largest sum which the assignees were offered; that no *bona fide* offer at public sale has ever been made, as required by law, and the provisions of the mortgage, and for these and other good and sufficient reasons to be shown at the hearing they pray that the sale may be vacated and rescinded and be not ratified.

The mortgage is for the sum of $1,100.00 and is on a farm of something over two hundred acres—the advertisement

stated 205 acres more or less—and Mr. Samuel Hebb, one of the mortgagors, testified that there were two hundred and ten acres. The farm was offered at public auction on the 18th of April, 1922, by the appellees, but it was withdrawn, as the highest bid was $4,500.00, which was made by William E. Hebb, one of the exceptants and a nephew of the mortgagors. Before the property was offered for sale, Mr. Wolfinger, as attorney for William E. Hebb, had offered to pay off the mortgage if the assignees would assign it, but they said they would accept the amount due and release the mortgage, but would not assign it. Before the property was sold to Mr. Poffenberger, Mr. Mason, one of the assignees, asked Mr. Wolfinger to make a bid for the property, but he replied by saying that he was authorized by William E. Hebb to buy the farm and that he would give $100.00 more for it than the highest bid made by any other person. Mr. Mason told him he could not tell him the amount of the bids by other parties, as it would not be fair to them. Of course that could not have fairly been done, as trustees or parties occupying in effect such a position would not be permitted by the court, if known to it, to adopt such measures. If that were permitted, purchasers at private sales could not be obtained if aware of such practice, and it would be unfair to those in good faith bidding, if trustees used them to run up the price, while there was an outstanding agreement to sell the property to another at $100 or any other sum larger than was offered by those not in the secret.

On April 12, 1922, which was after the property had been advertised and before the day fixed for the sale, the mortgagors executed an agreement which referred to the advertisement and authorized William E. Hebb to purchase the property for them. They agreed to transfer all their right, title and interest in and to the equity cause, all their estate therein, and all their right, title and interest in and to the proceeds of the sale of the property and to execute all other instruments, whether by way of mortgage, deed, or otherwise, as William

E. Hebb might require, in order to protect himself from loss on account of the purchase. They also agreed to execute a mortgage on their property in Sharpsburg, where they resided, and which was conveyed to them by James Snyder, if he should require or request the execution of it.

Although William E. Hebb did not sign the paper, it recited that he covenanted and agreed that if he purchased the farm it would be made for and on account of the mortgagors, and that he would account to them for the proceeds of sale, and all securities, assignments or transfers made to him pursuant to the agreement, and that he would, upon the request of the mortgagors, their heirs or legal representatives, and upon indemnification of all moneys by him expended, paid, or debts contracted or incurred, convey the farm to them or anyone designated by them.

Mr. Mason testified that he was not aware of the agreement until it was produced during the taking of the testimony in this case. If William E. Hebb had the money to buy the property as he said he was prepared to do, we do not understand why he did not make a bid as the assignees requested, or why Mr. Wolfinger, as his attorney, did not make a bid of the value of the property if it was worth more than what Mr. Hebb bid at the public sale. Mr. Hebb testified that he was ready to bid up to $8,000.00, if necessary, although he did not say that the property was worth that amount. With the exception of the commissions, it would apparently have made no difference whether he bid $5,000 or $8,000, as under that agreement, he was buying it for the mortgagors, and they would have been entitled to the excess over what was due by them. The only debts spoken of in the case are the mortgage of $1,100.00, the judgment of $2,000.00, and the suit for $1,627.40. If the property was worth anything like $8,000 William E. Hebb had a large margin between what he bid at the public auction and the value of the property. If, as he says, he was able and willing to take the property, it is unfortunate that he did not make a more substantial bid than

$4,500 and thus save for the mortgagors all they had in it, over and above such indebtedness as may be shown to exist.

There is no evidence to show that the "sale was unfairly made to the said George H. Poffenberger, pursuant to a design and purpose on the part of the said George H. Poffenberger and the said assignees that the said Poffenberger, and he only, should become the purchaser of said farm," etc. That was not attempted to be proven in the case, as no one can fairly claim that what appears in the record does tend to prove it. If it was true, a court of equity should not hesitate to set the sale aside.

The mortgage was not given to Poffenberger, but to Snyder, for payment or part payment of the property in Sharpsburg purchased by the mortgagors of James Snyder. It was dated November 29, 1916, and as far as shown by the record, Poffenberger had nothing to do with that purchase. As he had a judgment for $2,000 against the mortgagors, if he is really the present owner of the mortgage, as the appellants allege and is probably true, he had the right to refuse to assign the mortgage, as it is prior to his judgment. The mortgagors could have paid it off, and could have given William E. Hebb a new mortgage to secure him, if he advanced them the money with which to pay off the Snyder mortgage. That would have been subject to the $2,000 judgment, but if that is fraudulent and without consideration, as the exceptions state, steps could then have been taken to have it set aside. If the above could not have been done because of the incompetency of the mort-gagors, or either of them, a committee could have been ap-pointed and, if necessary, authority could have been obtained from the court to enable him to give a new mortgage. There was certainly no valid reason for permitting a sale under this mortgage, if William E. Hebb was ready to do what the agree-ment of April 12, 1922, authorized, if the parties were com-petent to make that agreement, and if not, steps could have been taken as suggested above, for their protection. Why the assignees should be subjected to the charges made in the ex-

ceptions against them is not shown, when according to the exceptants William E. Hebb was not only willing, but able to protect the mortgagors, as he claims is his object, and to secure himself either by a new mortgage given by the mortgagors, or by such of them as could act and a committee to be appointed by the court, if necessary and proper. The remedy was so simple that it is difficult to understand why it was not pursued.

There are some insinuations in the record outside of that, but no proof. If Poffenberger had taken advantage of those old people by fraudulently procuring a lease for five years, obtaining a judgment for $2000, or in other ways, it is unfortunate and peculiar that more than appears in this record was not produced as evidence. Two competent attorneys appeared for the appellants. Mr. Wolfinger testified that he was employed in the fall of 1921 to investigate the affairs between the mortgagors and Poffenberger, but with the exception of two witnesses who testified that Poffenberger told them he expected in a short time to have the farm, or something of that kind, nothing was offered. The testimony fell far short of the charges in the exceptions, and what there was did not involve the assignees in any way. Courts cannot assume that reputable members of the bar would be guilty of such things as are charged in these exceptions, and unless the parties making them can support the charges by evidence, they should not be made, and if there was any such evidence it should have been produced. The exception alleging that an offer of a larger sum than any other purchaser had made is answered by what we have already said in reference to the $100; the statement that the purchase price of $5,250.00 is not the largest sum which the assignees have been offered has no foundation whatever in the record, unless it refers to the $100.

The mortgagors not only had the right to pay off the mortgage, but according to the evidence the assignees offered to accept the amount due on it and release it, as they could

have been required to do. If the appellants were not willing to trust the assignees, $1,100.00 plus whatever interest and costs had been validly incurred after the advertisement had commenced, would have taken the sale out of their hands. It is true that attorneys selling under a power in a mortgage must deal fairly with all parties interested, and have no right as such to favor their clients to the prejudice of others, but it is well known that those named as attorneys in a mortgage with power to sell are generally the attorneys of the mortgagees, and frequently mortgages are assigned to attorneys of mortgagees for the purpose of foreclosing them under the powers of sale. While they should be on their guard not to forget that they occupy positions of trust for all persons interested, they are not prevented from selling to their clients if they are entitled to purchase, as mortgagees are under our statute.

We have had no difficulty in reaching the conclusion under this record that there is no foundation for the charges or insinuations in these exceptions against the assignees who made the sale, and there is little or no evidence in the record to support the charge against Poffenberger that he was scheming to obtain this farm from these old people. If the debts he claims they owe him are honest and really due him, he may have said to the two witnesses who testified that it would not be long before he owned the farm, or something to that effect, but schemers and those acting fraudulently do not generally advertise their schemes and frauds, and it may be that he was simply facing what he believed to be facts—that he would eventually have to buy the farm to protect what the mortgagors owed him. If, on the other hand, the indebtedness he claims is not honest, but fraudulent and unjust, it ought to be proven. As the investigations started in the fall of 1921, by this time something ought to have been developed, especially as it was important to get whatever information could be gotten from the mortgagors

as soon as possible, as they are of ages which are not likely to permit of their improvement.

The only question in the case about which we have had any doubt is whether the fact that a bond had not been filed by the assignees at the time the farm was offered at public auction should affect a private sale made after the bond was given. Section 7 of article 66 provides that "Before any person so authorized shall make any such sale, he shall give bond to the state in such penalty and with such surety as shall be approved by the judge or clerk of a court of equity," etc., etc. If a sale had been made before the bond was filed and approved some question might have been raised by exceptions to the sale, or on appeal from an order or decree ratifying it, although it could not have been attacked collaterally by reason of the omission. Judge Alvey said in *Cockey* v. *Cole,* 28 Md. 276, 283, "The court in which these proceedings took place was not one of special or limited jurisdiction, but of general common law and chancery powers. Foreclosure of mortgages and the execution of trusts were subject matter peculiarly within its jurisdictional power, and the statute simply provided a summary mode for the exercise of an ordinary jurisdiction. Instead of a regular proceeding for foreclosure, the agreement of parties, as expressed in the power contained in the deed of mortgage, is substituted for a decree of sale, and upon report to and final ratification by the court, the sale has all the judicial sanction that it could have on more formal proceedings." In that case a record of a sale of property under a power in a mortgage was offered in evidence and objected to on the ground that the bond was defective, and the court was without jurisdiction. This Court held that it could not be attacked collaterally, but only by exceptions to the sale or an appeal. The court declined to pass on the sufficiency of the bond.

As the assignees filed their bond, which was approved on April 25, 1922, and the sale now in question was not made

and reported until April 26, there does not seem to be any ground for setting it aside, because no bond had been filed when the property was offered at public auction. That was overlooked in some way, but no sale was actually made until after the bond was filed and approved, and there is no suggestion that the property might have brought more if it had been given before the offer at public sale. It has been held that a bond prescribed by sec. 7 of art. 66 can be given on the day of sale, as the law presumes it was before the sale. *Hubbard* v. *Jarrell,* 23 Md. 66, 83. William E. Hebb was a bidder at the public auction and only bid $4,500. There is no evidence that the property was worth more than $5,250, the amount at which it was sold to Poffenberger at private sale. It could not be inferred that it was worth $8,000, because Mr. Hebb said he was prepared to go that high, as he was $2,500.00 short of that when he did bid for it, and his attorney, whom he had authorized to act for him, declined to offer any definite amount at private sale, excepting that he would give $100 more than the highest bid offered by any other person, of which we have spoken above.

Although in some of our cases it has been said that the trust commences with the filing of the bond, that that is the beginning of the exercise of the power in the mortgage, and in *Heider* v. *Bladen,* 83 Md. 242, that the only preliminary requisite to a sale under article 66 was set forth in the 7th section, such expressions must be construed in connection with the facts in the respective cases and what has been determined in other decisions. As in *Hubbard* v. *Jarrell, supra,* where the question was directly involved, it was distinctly held that the bond could be given on the day of sale and in legal presumption would be considered as done before the sale, and as the advertisement must begin at least twenty days before the day of sale, if no time is fixed in the mortgage, in order to comply with sec. 8 of art. 66, it cannot be technically correct to say that giving the bond is the beginning of the exercise of the power in the mortgage, or that it

is the only preliminary requisite to a sale, or that the trust commences with the filing of the bond, unless those expressions meant, as they probably did, that giving the bond was the first thing required to be done in court, as the judge or clerk of the court of equity of the county in which the mortgaged premises lie must approve the bond. If there was not a substantial compliance with the requirement to give such notice as may be stated in the mortgage, or, if there be no agreement as to it, to give twenty days' notice of the time, place and terms of sale, the sale would not be confirmed by the court unless by agreement or under some peculiar circumstances. There is no more frequent objection urged against the ratification of sales than the want of a proper notice, and there is nothing of more importance in connection with sales of this character than the advertisement of the time, place and terms of sale, giving such a description of the property as is necessary to inform the public as to what is being sold.

It is said in *Miller's Equity Procedure*, 546, sec. 466, that "The jurisdiction of the court becomes complete on the filing of the report of sale. Until then all the proceedings are *ex parte*. But when this is done the equitable cognizance of the court obtains, and thereafter equitable principles, such as are applicable to sales under decrees in chancery, control the disposition of the case. The report of sale is the first official intercourse of the person exercising the power of sale with the court." In *Beetem* v. *Garrison*, 129 Md. 664, where there was a sale under a power in a mortgage, JUDGE THOMAS, after referring to the section in *Miller's Equity Procedure* from which we have just quoted, *Patapsco Guano Co.* v. *Elder*, 53 Md., 463, and *Glenn et al* v. *Wooten et al.* 3 Md. Chy. 514, said: "In this case the record shows that the trustee or attorney offered the property at public sale in accordance with the terms of the mortgage and withdrew it because he did not receive a satisfactory bid therefor. Having complied with the terms of the mortgage, he was author-ized to sell it at private sale, subject to the ratification and

approval of the court, and the court has jurisdiction to set aside or ratify the sale." We do not find in this record a copy of the mortgage, but if it is in the usual form of such mortgages, as we may assume it is in the absence of some evidence to the contrary, the assignees complied with its terms by offering the property at public auction after giving at least twenty days' notice by advertisement in "The Evening Globe," a newspaper published in Washington County.

The condition of the bond as prescribed by sec. 7 is "to abide by and fulfill any order or decree which shall be made by any court of equity in relation to the sale of such mortgaged property or the proceeds thereof." The section continues, "and such bonds shall be and remain as an indemnity to and for the security of all persons interested in such mortgaged property or the proceeds thereof," etc.

As sec. 9 of art. 66 provides that all such sales shall be reported to the court "and there shall be the same proceedings on such report as if the same were made by a trustee under a decree of said court, and the court shall have full power to hear and determine any objections which may be filed against such sale by any person interested in the property and may confirm or set aside such sale," it might be argued that a sale would not be void if made without the bond having been first given, as was decided in a case where the sale was by a trustee appointed under a decree of foreclosure of the mortgage under the practice in Baltimore City. *Speed* v. *Smith,* 4 Md. Chy. 299. There the chancellor required the trustee to give a bond before he ratified the sale, but refused to set aside the sale because the bond was not given before the sale was made. As the bond is intended to protect interested parties from loss by the acts, defaults or misconduct of the party selling, the most important thing is to have a valid bond before or at the time he receives the purchase money or some part of it. But inasmuch as the statute requires the bond to be given, it may be contended that that differentiates such a case from one in which the court has

appointed a trustee under the practice in Baltimore City, and in the decree required him to give bond before selling, as was done in *Speed* v. *Smith, supra.* As the statute authorizing the court to pass such a decree expressly provides that the Court "shall require bond and security for the performance of the trust as is usual in cases of sales of mortgaged premises," it would seem to be very difficult to make a logical distinction between the two classes of cases in reference to filing the bond.

But as the bond in this case was actually given before the sale was made, and as the assignees had duly advertised the property as provided for by the statute, and offered it for sale, and as there is no intimation that the fact that a bond had not been given up to that time in any way affected bidders or kept any from bidding, we are of opinion that the assignees had the right afterwards to sell the property at private sale, having withdrawn it on the day it was advertised for sale because they thought there had been no sufficient bid. There being no other reason which, in our judgment, would require or justify the sale to be set aside, the decree of the lower court will be affirmed.

*Decree affirmed, the appellants to pay the costs.*