## WALSH et ux. *v.* JEFFERSON FEDERAL SAVINGS AND LOAN ASSOCIATION

[No. 176, September Term, 1957.]

132

*Decided March 25, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT and HORNEY, JJ., and J. DEWEESE CARTER, Chief Judge of the Second Judicial Circuit, specially assigned.

*Kelley Litteral* and *Edward L. Foster,* with whom was *Harold T. Grier* on the brief, for appellants.

*James H. Pugh,* for appellee.

PRESCOTT, J., delivered the opinion of the Court.

The former owners of real estate have appealed from two orders of the Circuit Court for Montgomery County, one of which dismissed their exceptions and the other ratified a sale, under statutory foreclosure proceedings conducted on behalf of the appellee by the assignee of said mortgage for the purpose of foreclosure.

In 1950, the appellants borrowed from the Jefferson Federal Savings and Loan Association the sum of $5,900 and secured the same by mortgage. The mortgage was payable in monthly instalments and contained an acceleration clause. In September, 1955, the mortgage being in default, it was assigned to James H. Pugh, Esquire, a member of the bar, for the purpose of foreclosure. On September 19, 1955, proceedings were instituted in the equity court, and an adver-

tisement of sale was published by the attorney in a county newspaper stating the sale of the property would take place on October 10, 1955. The attorney filed a bond for $7,000 which was duly approved by the clerk on September 23, 1955. On October 10, 1955, the appellants paid the amount that was in arrears and brought the mortgage to a current status; whereupon the sale of October 10, 1955, was called off, but the foreclosure proceedings were not dismissed and remained open. Shortly thereafter, the appellants again permitted the mortgage payments to become in arrears, and failed, in violation of the terms of the mortgage, to pay the taxes due on the property. The property was again advertised for sale (to take place this time on May 4, 1956) under the power contained in the mortgage. On May 4, 1956, the mortgagee accepted a portion of the sum past due from the appellants, and called off this sale, the original equity proceedings still not being dismissed. In November, 1956, having received no payments since August, the appellee decided to call for full payment of the mortgage, which it did. After affording the appellants an opportunity to refinance the loan, which they failed to do, the property was again advertised and sold on February 26, 1957, for the sum of $12,000. The assignee for the purpose of foreclosure promptly filed an additional $5,000 bond in the original equity proceedings, and reported the sale to the court in that same proceeding. The appellants filed exceptions to the ratification thereof, and, after hearing them, they were dismissed by the chancellor, who confirmed the sale.

I

The appellants first contend that the chancellor erred in considering a certain letter that, upon objection, was not admitted into evidence. Of course, it is improper for a trial judge to consider and give weight to evidence that has been excluded, but the difficulty with the appellants' position on this point is that they fail to make a showing that such was the case. The letter was excluded, but is now in the transcript of the record; so the appellants claim they "must conclude nothing else than that it was considered by the Court in arriving at the opinion and decision." There is nothing

in the record to sustain this assumption or conclusion of the appellants. The point is not well taken; because we shall not presume the chancellor wrongfully performed his duty, and, if the record fails to show, affirmatively, that he did consider and give weight to the excluded evidence, we conclude that he did not do so.

## II

The principal objection raised by the appellants is their claim that the bond dated September 23, 1955, was not in force and effect on February 26, 1957, the date of the sale. They contend this bond was given for the anticipated sale on October 10, 1955, only, and when they paid up the arrearages and the sale was called off, the surety's obligation on the bond ceased; so, on the actual date of the sale, there was no bond filed by the assignee to cover the sale, which rendered it (the sale) void. They claim that a new bond should have been given for the sale in February, 1957, and argue their position is fortified by the language of the bond itself. In this they rely strongly upon the recital in the bond that power and authority is given in the mortgage to make sale and that "said power and authority the said James H. Pugh *is now about to exercise* in accordance with the provisions of said mortgage"; and that portion of the condition of the bond that states the assignee shall "abide by and faithfully perform any order or decree which shall be made * * * *in relation to the said sale* or the proceeds thereof, * * *." They claim this language, by its own terms, explicitly limits the liability of the surety to the intended sale on October 10, 1955, and to no other. Manifestly, these questions can be solved only by an examination of the bond, any other instruments and statutes that must be considered in conjunction therewith, and the principles of law that aid in their interpretation and construction. It will be noted there is no contest here by the surety claiming that it is not liable under the terms of the bond. No question is raised as to the propriety of the actions of the assignee, but the claim is simply that the bond given was for a particular sale that was contemplated, but did not

take place; and when the sale was actually made no bond was filed to cover the sale.

The mortgage is of the same general nature of those frequently used in the locality where executed and provides that upon default in its terms or conditions, the mortgagee, or its assigns, was authorized and empowered to make sale of the property. The manner and method of making the sale and the distribution of the proceeds of the sale, also, were provided for. Article 66, sections 5 (b) and 7 of the Code (1957) provide, in part, as follows:

> Section 5 (b): "Before any person so authorized shall make any such sale, he shall give bond to the State * * * to abide by and fulfill any order or decree which shall be made by the court in relation to the sale of such mortgaged property or the proceeds thereof; and such bonds shall be and remain as an indemnity to and for the security of all persons interested in such mortgaged property or the proceeds thereof * * *."

> Section 7 (a): "All sales made under any of the foregoing sections hereof shall be reported under oath to the chancery court where the sale is made, and there shall be the same proceedings on every such report as if the same were made by a trustee under a decree of said court and the court shall have full power to hear and determine any objections which may be filed against such sale by any person interested in the property and may confirm or set aside said sale."

The bond, also, was of the same general nature of those frequently used, and, eliminating those portions not directly questioned herein, provided:

> "WHEREAS, by a certain mortgage from David A. Walsh and Elsa Walsh, his wife, dated the 31st day of March, 1950, which was duly recorded * * *, and by assignment assigned to James H. Pugh for the purpose of foreclosure, power and authority is

given unto the same James H. Pugh to make sale of certain real estate \* \* \* in said mortgage more particularly described, which said power and authority the said James H. Pugh is now about to exercise in accordance with the provisions of said mortgage.

"NOW, THEREFORE, the condition of the above obligation is such that if the said James H. Pugh shall well and truly perform and execute the trust reposed in him by the said mortgage and shall abide by and faithfully perform any order or decree which shall be made by the Equity Court in relation to the said sale or the proceeds thereof, then the obligation shall be null and void; otherwise to be and remain in full force and virtue in law."

There was no limitation with respect to the duration of time of the obligation of the surety contained in the bond.

The cardinal rule in the interpretation of bonds, as in the interpretation of all written contracts, is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. *Levy v. Glens Falls Indem. Co.,* 210 Md. 265, 273, 123 A. 2d 348. While the contract of a surety for profit is not to be so strictly construed as one of a surety not for gain, *Women's Hospital v. Fid. & Guar. Co.,* 177 Md. 615, 618, 11 A. 2d 457, *Lange v. Board of Education,* 183 Md. 255, 260, 37 A. 2d 317, it is clear that the liability of a surety is not to be extended, by implication, beyond the terms of its contract, *Art, etc., Corp. v. Fidelity Con. Corp.,* 194 Md. 110, 116, 69 A. 2d 808, but the nature of the duty of the obligor and the character of the obligee must be regarded as explanatory of their intent. *Strawbridge v. Baltimore & O. R. R. Co.,* 14 Md. 360. The meaning of the terms of the bond, including the condition contained therein, are to be ascertained by reference to the language of the mortgage deed and pertinent statutes; and the surety was charged with knowledge of the equity proceedings. *Assurance Corp. v. State,* 163 Md. 119, 124, 125, 161 A. 249.

Applying the above principles to the facts of the case at

hand, we proceed. The equity proceedings herein were to ratify the actions of the assignee in the exercise of the statutory power of sale contained in the mortgage, as distinguished from the general equity jurisdiction to decree a sale of mortgaged premises. The appellants argue the bond given was for the anticipated sale of October 10, 1955, and that sale alone. The decisions of this Court are replete with decisions that affirmed decrees that ratified private sales by persons exercising statutory powers of sale in mortgages, with similar bonds, after the properties had been offered at public sale and withdrawn because of the insufficiency of the price offered. Among these decisions, see *American Surety Co. v. Noble,* 154 Md. 150, 152, 140 A. 42; *Hebb v. Mason,* 143 Md. 345, 122 A. 318; *Beetem v. Garrison,* 129 Md. 664, 99 A. 897. If the bonds furnished in those cases anticipated covering only the contemplated public sales that were advertised, they, of course, would not have been effective as to the private sales. It is true that the bonds were not directly attacked in the above cases, but the failure to do so illustrates the practice in this State.

This Court has also held that when the equity courts are exercising their general jurisdiction to decree a sale of mortgaged premises and have passed a decree for such a sale, if the mortgagors pay the amount due to make the mortgage current and costs, the sale should be *stayed,* but the decree of foreclosure *will remain as a further security to enforce the payment of the future interest and instalments of the principal, as they respectively become due.* *Clark v. Abbott,* 1 Md. Ch. 474, 477; *Better v. Williams,* 203 Md. 613, 617, 102 A. 2d 750. And it was said in *Beetem v. Garrison, supra,* 129 Md. 672: "The object of this provision of the Code (now Art. 66, section 7 (a), Code (1957)) was to confer upon courts the same jurisdiction, and to direct that the same proceedings should be had in sales made under a power in a mortgage (statutory authority), as if such sales had been made under a decree of the Court (general equity jurisdiction)." If the above be so, the present assignee, even though acting under the power of sale in the mortgage, had the right when the past-due instalments and costs were paid, to call

off the sale of October 10, 1955, and the one subsequent thereto, thereby staying the sale of the property, and leave the equity proceedings open as a further security to enforce future payments. And, after a further default and he decided again to advertise the property for sale, he was not starting a new and independent proceeding, *State v. Second National Bank*, 84 Md. 325, 35 A. 889; nor did he need an order of court to make the sale, *Reeside v. Peter*, 35 Md. 220.

Under the circumstances, we think a careful examination of the bond, the mortgage and the statutes leads irresistibly to the conclusion that it was the intention of the parties who executed the bond that it be in full force and effect as of February 26, 1957, when the sale took place: the very nature of the undertaking of the party who was to make the sale, where experience and an examination of the decisions of this Court disclose that sales are frequently withdrawn because of insufficient bids and re-sales had; and mortgagors often make payments of all arrearages, the advertised sales are called off and re-sales occur; and the statute, section 7, requires a report of all such sales to the court, with explicit power in the court to hear objections to them and, in proper cases, to set them aside and order re-sales. The mortgage contained the usual authority to sell upon default in its terms. The bond recited this power of sale and the fact that the assignee was about to exercise the same. The condition contained therein was that the assignee would "well and truly perform and execute the trust reposed in him by the mortgage (the power to sell the mortgaged premises) and shall abide by and faithfully perform *any* order or decree which shall be made by the Equity Court in relation to the said sale or the proceeds thereof." We think the words "said sale" in the last line quoted refer to "the *trust* reposed in him by said mortgage," i. e., the power of sale mentioned in the mortgage, and not to the particular sale that was scheduled to take place on October 10, 1955. The statute specifically states the bond "shall be and *remain* as an indemnity to and for the security of all persons interested in such mortgaged property or the proceeds thereof." The surety was charged with notice of the equity proceedings; yet it made no effort to have the bond

cancelled. Cf. *Williston, Contracts,* (Rev. Ed.) sec. 38. It was bound by the explicit language of the bond to a prospective obligation, and, inasmuch as there was no term therein limiting the obligation to defaults (we repeat there was no defalcation in this case) occurring with respect to any point of time,[1] we hold that the bond, when read in association with the mortgage and appropriate statutes, shows the surety would have been liable for any default by the assignee under the sale that was made, which means the bond was in effect on February 26, 1957. *Williston, op. cit.* ps. 104, 105; *C. J. S. Principal and Surety,* sec. 107.

The case of *Beetem v. Garrison, supra,* 129 Md. 668-674, is interesting in that it discloses the procedure in this class of proceedings adopted, at least, in some parts of this State. In June, 1914, suit was instituted in Baltimore County to exercise the power of sale contained in a mortgage, and a bond was filed at that time. The property, which consisted of two ground rents and a lot owned by the mortgagors in fee simple, was advertised for sale and, on June 23, 1914, a public sale was held. At this sale, the two ground rents were sold, but the lot was withdrawn because the attorney making the sale deemed the highest bid received therefor to be insufficient. The sale of the ground rents was reported to the court and was finally ratified in October of 1915. On February 12, 1916, roughly twenty months after the public sale, the attorney sold the lot at private sale, without giving another bond, and reported the sale to the court. Although exceptions were filed to the sale, the question of the validity and continuation of the bond was not raised. The sale was ratified by the lower court, and its action was affirmed on appeal.

### III

The appellants also claim the chancellor committed error when he permitted a representative of the bonding company to testify, over objection, that the bonding company considered the bond that was filed on September 23, 1955, was in full force and effect on February 26, 1957, the date of the sale.

---

1. Cf. *Assurance Corp. v. State, supra,* 163 Md. 129.

In the view we have taken of the case above, it is unnecessary to decide this question; because we think the proper interpretation of the bond shows that the bond was in force and effect at the time of the sale.

*Orders affirmed, with costs.*