# EDITH TYLER GRIFFITH AND ALFRED J. SHRI-
# VER, TRUSTEE, *vs.* JOHN T. DALE.

*Mortgage Sales—When Costs of Vacated Sale Allowed Out of
Proceeds of Second Sale—No Allowance of Counsel and Wit-
ness Fees to Trustee Making Sale—Allowance for Insurance
Premium—Cost of Stenographer—When Trustee Entitled to
Commissions on Rents Collected Before Sale.*

When a mortgage sale made by a trustee is set aside, and the
trustee has not been guilty of any bad faith or misconduct,
the expenses of that sale will be allowed out of the proceeds
of a subsequent sale.

When a mortgage sale is set aside upon exceptions filed thereto
and another sale ordered, the trustee is not entitled to an
allowance out of the proceeds of the second sale for counsel
fees paid to a lawyer to oppose the exceptions to the ratifica-
tion of the first sale.

Nor is the trustee in such case entitled to an allowance for a
fee paid to a witness called to testify as a real estate expert in
opposition to said exceptions.

A mortgagee, who has insured the property against fire upon
breach of the mortgagor's covenant to do so, is entitled to a
*pro rata* allowance therefor from the time the insurance was
effected to the day of sale, after which time the policy enured
to the benefit of the mortgagee, who was the purchaser.

Exceptions to the ratification of a mortgage sale at which the
first mortgagee was the purchaser were filed by a junior mort-
gagee, and after testimony was taken the sale was set aside.
Upon the distribution of the proceeds of a second sale, *held,*
that a part of the charges of a stenographer for taking testi-
mony under the exceptions to the first sale was properly
charged against the first mortgagee.

When a trustee appointed to make a mortgage sale upon default
takes possession of the property and collects the rents there-

of, without an order of Court directing him so to do, and the rents are not paid to the mortgagee, but are brought into Court for distribution in the final audit after the sale, the trustee is entitled to commissions thereon, since the collection was for the benefit of all of the parties and would have been authorized by the Court upon application.

*Decided January 20th, 1909.*

Appeal from Circuit Court No. 2 of Baltimore City (GORTER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*David Fowler* and *Alfred Jenkins Shriver,* for the appellants.

*William S. Bryan, Jr.,* and *John L. G. Lee,* for the appellee.

HENRY, J., delivered the opinion of the Court.

Edith Tyler Griffith, one of the appellants, was the owner by assignment of a first mortgage, executed to secure a loan of $15,000 to John T. Dale, appellee, on the leasehold property of the said Dale, situated on South Howard Street, in Baltimore City. Default having been made by the mortgagor in complying with the covenants of the mortgage, Alfred J. Shriver, one of the appellants, was on the 2nd day of April, 1907, under the provisions of the mortgage, containing an assent on the part of the mortgagor to the passage of a decree for the sale of the mortgaged property, in conformity with the local law for Baltimore City, by the Circuit Court No. 2 of said city, appointed trustee to sell the property in said mortgage described and conveyed. By virtue of this decree, the trustee on the 2nd day of July, 1907, sold the property at public sale for $16,650, Mrs. Griffith being the

purchaser, and this sale, upon exceptions filed by John L. G.
Lee and Helen Larned, holders of a junior mortgage, was
on November 13th, 1907, after the taking of much testi-
mony, set aside and annulled by the Court.   Thereafter on
the 9th day of December, 1907, the same trustee again sold
the property in question at public sale to Mrs. Griffith for
$17,000, and this sale on February 28th, 1908, was finally
ratified and confirmed by the Court.

In the distribution of the proceeds of sale, and of rents col-
lected from the property by Shriver amounting to $2,282.54,
the auditor stated two accounts, one known as audit "A,"
according to his own ideas of what was proper, and another,
known as audit "X," under the direction of Shriver, the
trustee.   The Court, on May 26th, 1908, ratified the former
account, with the exception of an allowance of 5% commis-
sions to the trustee on the rents collected by him, and rejected
the latter account.   In the audit as adopted the expenses of the
first sale were allowed, but a fee of $150 paid by the trustee
to Charles Morris Howard, as counsel, in resisting the excep-
tions made to the ratification, and a fee of $50 paid to Frank
G. Caughy, an expert witness in the proceedings, were re-
jected, as was also a claim of $8.65 claimed on account of
insurance premiums paid.   In said audit there was also de-
ducted from the mortgage claim of Mrs. Griffith the sum of
$62.50, being for a proportionate part of the fee charged by
the stenographer in the proceedings on the exceptions.

Because of the aforegoing, both Shriver, the trustee, and
Mrs. Griffith have taken an appeal here from the order of the
lower Court in ratifying the auditor's report.

The record in the case is an extensive one, dealing princi-
pally with the evidence adduced in support of and in oppo-
sition to the exceptions filed to the ratification of the first
sale.   As no opinion was filed by the lower Court, we are not
advised of its reason for setting aside this sale, but whether
it was rightfully or wrongfully done is not before us, and
we have no concern with it except so far as the good faith
of the trustee in conducting the same may bear upon the pro-

priety of allowing the expenses thereof out of the proceeds of
the second sale. It is sufficient for us to say that after an
examination of the testimony we find no evidence of inten-
tional wrongdoing on the part of the trustee, however much
he may have misconceived his duty in some respects, but his
conduct appears to have been characterized by entire good
faith, with a view of saving from loss the junior incumbranc-
ers who afterwards successfully attacked the sale. The case
of *The Real Estate Trust Company v. Union Trust Co.,* 102
Md. 41, where a resale was ordered because a trustee, acting
upon the advice of counsel, failed to file a bond before selling
the property, is authority for the general statement that in
the absence of bad faith on the part of a trustee the expenses
of a first sale should be paid out of the proceeds of a sec-
ond. The case of *South Baltimore Company v. Kirby,* 89
Md. 52, also sustains this point.

But accepting the foregoing as correct, the question arises
as to whether an attorney's fee, such as was paid in this case,
is a proper item of expenditure to be charged against the com-
mon fund. There is no authority for such an allowance in
the mortgage itself, which merely provides for the payment
of the costs and expenses of the sale, and the same provision
in a power of sale mortgage has been held by this Court to
include the cost of advertising, the services of an auctioneer
and such other expenses as are necessary to make an advan-
tageous sale, but does not even include the payment of com-
missions to the party making the sale, much less of a fee
to an attorney for defending the ratification of the same.
*Johnson v. Glenn,* 80 Md. 369.

There seems to be no inflexible rule of law on the subject,
but the general principle, which is justified by sound reason-
ing and by authority, is that where a trustee employs an at-
torney to render necessary services for the benefit of all the
parties interested in the estate, or seeks advice for the proper
administration of his trust, that a reasonable fee, though not
specially provided for in the decree, is to be allowed for such
services out of the common fund in his possession. In this

case the attorney did not represent all the parties. On the contrary, he was distinctly hostile to the position taken by the two junior mortgagees. He was employed either by Shriver, the trustee, or by Mrs. Griffith, the purchaser at the sale, or by both of them, and we think should look to them for payment for his services To allow his fee of $150 out of the fund in hand, would practically be making the exceptants in the proceedings in the lower Court pay for the services of counsel employed by the other side.

In the case of *Mahoney v. Mackubin,* 54 Md. 277, which was cited with approval in the later decision of *Shaw* v. *Smith,* 107 Md. 523, where the mortgagee, under a power contained in the mortgage, made sale of certain real estate, he was refused an allowance of $150 paid to an attorney for successfully defending exceptions to the ratification of the sale. We understand that in this case the sale was made by a trustee, appointed under the statute, rather than by a mortgagee under a power, but the case above referred to is worthy of mention as showing that the Court does not consider the employment of an attorney as a usual expense, but rather as an extraordinary one, to be paid for by the person procuring the same, and only allowed out of a common fund when the services rendered are for the benefit of all the parties interested, and not in hostility to part of them. As shown in this case, the attorney was unsuccessful in maintaining the sale against the exceptions of the two persons immediately interested in the property, and we feel that it would be improper to make them contribute in whole or in part to the payment of his fee. *Miller's Equity,* sec. 564; *McGraw* v. *Canton,* 74 Md. 554; ; 11 *Cyc.* 97.

We likewise think the lower Court correct in refusing to allow the trustee the sum of $50 paid by him to Frank J. Caughy, an experienced real estate dealer, who was called as an expert witness to controvert the allegation in the exceptions to the effect that the property sold for an inadequate price. To sanction a fee of this character would be opening the door to extravagant expenditures and inviting trustees to

an abuse of the confidence reposed in them. If such a fee were allowed to one witness, it could be allowed to several, or to many, until in the discretion of the trustee he had produced sufficient evidence to maintain the point at issue, and by such practice an estate might be squandered in litigation, to the detriment of the mortgagor or to other claimants of the property. The only safe course is to hold trustees to a strict accountability, allowing such proper costs as are incident to the sale, but forbidding the wasting of a fund by extraordinary expenses in litigation.

In respect to the claim of $8.95 for difference in allowance for insurance, we see no merit. In audit "A" the trustee was allowed $39.91 on account of payments of insurance premiums on the property, and in audit "X" he was allowed $48.86 for the same account. According to the facts of the case, it seems that on March 30th, 1907, Mr. Shriver, who afterwards became the trustee, paid $57.50 for insurance on the property, the mortgagor having made default in his covenant to do so. The second sale of the property was made on Dec. 9, 1907, and in stating the audit, a *pro rata* amount of the $57.50, for the period elapsing between March 30th and December 9th, 1907, was allowed to the trustee, as the policy inured after the latter date to the benefit of the mortgagee who was also the purchaser. The appellant trustee claims that he should have been allowed the full $57.50 less such amount as would have been the return premium had the policy been cancelled on the 9th day of Dec., 1907. It nowhere appears in the record that the policy was so cancelled, or that a premium was returned. Inserted in the record is a letter from the insurance agents to the effect that if such policies had been cancelled the return premiums would have been $8.63. But we are not dealing with a hypothetical case, and the auditor, under the actual state of facts, properly apportioned the premiums.

As to the deduction of $62.50 from the claim of the first mortgagee, the same being for a proportionate part of the charges of the stenographer employed in the case, the Court

likewise made a deduction for the services of the stenographer from the claims of the two junior mortgagees, and in so apportioning these costs, which are not of a strictly necessary or usual character, we must presume that the lower Court acted with sound discretion which it is not the practice of this Court to overrule. Mrs. Griffith was a party to the proceedings, filing a request for the ratification of the sale, and though the record furnishes scant details of her participation in the proceedings which culminated in the setting aside of the sale, we are to assume, in the absence of anything contrary appearing in the record, that the stenographer was employed in her behalf.

In both of the audits the trustee was allowed a commission of five per cent. on $2,282.54, being the amount of rents collected by him from the property from April 1st, 1907, to December 9th, 1907, the date of the second sale, but the Court rejected this allowance and directed the same to be distributed between the two owners of the second mortgage in proportion to their respective interests.

Shriver, according to the testimony, after default on the part of the mortgagor, on March 30th, 1907, took possession of the mortgaged property in behalf of Mrs. Griffith, the first mortgagee, and the tenant in possession, in compliance with notice to that effect, thereafter paid the rents to him. On the second day of April following, or only three days after taking possession of the property, Shriver filed a petition, as solicitor for Mrs. Griffith, praying for the passage of a decree authorizing a sale of the mortgaged property, and on the same day the Court, under the assent contained in the mortgage, passed such decree, naming Mr. Shriver as trustee to make the sale. The rent falling due April 1st, 1907, having been paid in advance by the tenant to the agent of the mortgagor, all the collections by Shriver were made after his appointment as trustee.

It is urged by the second mortgagee that as the decree gave no power to the trustee to collect the rents, but limited his authority to the sale of the property, in conformity with the

terms of the mortgage itself, and as he had taken possession
on behalf of the mortgagee prior to his appointment as trus-
tee, that such collections must be regarded as made for the
benefit of the mortgagee, and that under the law no compen-
sation can be allowed for his services. If the facts be conced-
ed, it cannot be denied that the weight of authority is strong-
ly in favor of the legal proposition advanced and the cases
cited fully sustain the point. *Gelston* v. *Thompson*, 29 Md.
601; 4 *Kent's Com.* 167; *Pom. Eq. Jur.*, sec. 1217; *Elmer*
v. *Soper*, 25 N. J. Eq. 483; *Barnard* v. *Patterson*, 137 Mich.
633, 100 N. W. Rep. 893.

Apparently Shriver was in possession of the property in
a dual capacity, one as representative of the first mortgagee,
for the purpose of collecting rents for her benefit, and another
by virtue of the Court's decree as trustee to sell for the bene-
fit of all the parties. We do not deem it necessary to con-
sider the point as to whether the decree naming a trustee for
one purpose had the effect of displacing or superseding the
possession of the mortgagee which was for another purpose,
for we think a proper decision of this matter may be reached
by looking through the form to the substance of the acts done
by Shriver. He himself seems to have been doubtful as to his
position, for we find him declaring, in an answer to a peti-
tion filed for the appointment of a receiver, page 244 of the
record (which petition was not acted upon by the Court), that
checks for the rent were made payable to himself as trustee
and attorney for Mrs. Griffith; that the right to the rents and
profits was a substantial one, of which the mortgagee could
not be deprived, and at the same time stating that the money
collected was being held by him subject to the order of Court.
The plain fact remains, nevertheless, that the rents collected
were never paid over to Mrs. Griffith as a credit on the prin-
cipal or interest of her mortgage, but part of the sum was
applied to the payment of premium for insurance on the
property, part to the payment of ground rents and taxes, and
all of it was brought into Court for an accounting and for
distribution. These acts were for the benefit of all the parties

interested in the property, including the second mortgagees and the mortgagor himself, and were not solely for the benefit of the first mortgagee, and were of such a character as could be more justly ascribed to Shriver in his capacity as trustee rather than as attorney for the mortgagee. While it is true that without an order of the Court appointing him, he was without authority to collect the rents, as trustee, yet we think the circumstances of the case appropriately call into operation the familiar maxim that a Court of equity will ratify that when done which, if previously applied to, it would have ordered. Or, as stated in *Gray* v. *Lynch,* 8 Gill, 426: "It is a settled rule in chancery that when a trustee does, without an application to the Court, an act which would have been ordered, if authority for that purpose had been previously applied for, and at the time of the act being done it was obviously for the benefit of all concerned, such act will be ratified and affirmed, and held of the same validity as if it had emanated from the previous order of the Chancellor."

In *Brown* v. *Hazelhurst,* 54 Md. 26, and *Abell* v. *Brown,* 55 Md. 217, will be found illustrations of the salutary application of this equitable rule.

Under the circumstances of this case, in which it seems clear that the value of the property was insufficient to discharge the liens against it, we cannot doubt that the Court, if applied to, would have authorized the trustee to make such collections, and we think for his services he should be paid the reasonable compensation of five per cent. allowed in the audit, which we have referred to herein as audit "A."

The decree of the lower Court, therefore, will be affirmed in part and reversed in part, but as the expensive record contains much irrelevant matter, not necessary for the determination of the questions raised, we think it proper that the costs of this appeal should be paid one-half by the appellants, that is to say, one-fourth by Edith Tyler Griffith and one-fourth by Alfred J. Shriver, and the other half out of the fund.

This disposition of the costs will make it necessary for the

auditor to state another account in conformity with this opinion.

> *Decree affirmed in part and reversed in part, the costs to be paid one-half by the appellants, that is to say, one fourth by Edith Tyler Griffith and one-fourth by Alfred J. Shriver, and one-half out of the fund.*