## GEORGE et al. v. FOREST GLEN LAND CO. et al.

(Court of Appeals of District of Columbia. Submitted April 11, 1922. Decided June 5, 1922.)

### No. 3749.

**1. Mortgages ⬉338—Failure to have indemnity clause released held fault of mortgagor, not mortgagee.**

Where the evidence, in a suit to restrain the sale of property under a trust deed on the ground that complainant mortgagor had sold his interest in the property to another, but was prevented from delivering the deed thereto by the mortgagee's refusal to release a covenant of indemnity in the trust deed, as it had to do on showing clear title to other land covered by the trust deed, showed that the title to the other land was subject to a reserved vendor's lien, and that no tender had been made by complainant of the amount required to satisfy the lien, the failure to complete the sale was due to the fault of the complainant, and not of the mortgagee, so that complainant had no equity against the mortgagee.

**2. Mortgages ⬉370—Mortgagee not chargeable with amount paid at previous sale not consummated.**

Where the trustee under a trust deed accepted, from a bidder whose bid exceeded that of the creditor, a check in part payment, instead of requiring cash, as provided in the deed, and thereafter the check was dishonored and the sale not consummated, the mortgagee, who bid in the property at a subsequent sale for a sum less than its bid at the prior sale, is not required to account to the mortgagor for the amount of its first bid.

**3. Mortgages ⬉377—Trustee held not entitled to half commissions for postponed sales.**

A trust deed giving the trustee a commission of 5 per cent. on the amount of the sale or sales, and providing that, if the property be advertised and not sold, the trustee shall be entitled to one-half the commission, to be computed on the amount of the debt secured thereby, does not entitle the trustee to half the stated commission on sales which were advertised, but not held, because of temporary injunctions, inclement weather, or failure by the trustee to require the highest bidder to make the prescribed deposit, but the provision for half commissions relates to cases where there is a redemption of the land from a completed sale.

Appeal from the Supreme Court of the District of Columbia.

Separate suits by William T. George and Chester A. Parvin against the Forest Glen Land Company and Eugene H. Taggart, as trustee, to restrain sale of property under a trust deed. From a decree overruling exceptions to a report of the auditor after sale was made, and fixing the commission of the trustee, the plaintiff George and the trustee appeal. Affirmed.

T. L. Jeffords, E. C. Dutton, and Joseph T. Sherier, all of Washington, D. C., for appellants.

Paul Sleman, of Washington, D. C., and William S. Thomas, of Baltimore, Md., for appellees.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District, overruling appellant's exceptions to a report of the auditor of that court, affirming that report, and holding that appellant George is not entitled to the relief prayed in his bill as amended.

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

281 F.—37

The suit grows out of the sale to George on November 30, 1918, of the Barrister Building, so called, No. 635 F Street, Northwest, this city; the sale being subject to a first trust on the property of $80,000 and a second trust of $50,000. In payment for the property George gave his note for $30,000, payable one year from date, and secured by a third trust on the property, wherein appellant Taggart was named as trustee, and, in addition, certain land in West Virginia. The third deed of trust contained a covenant securing the grantor against any loss or damage it might sustain by reason of any defect in the title to any of this West Virginia land; George guaranteeing that title "to be good and marketable and free from any and all liens and incumbrances." It was further provided that, when a proper certificate of title should be presented to the grantor Land Company, a release of this covenant should be given.

It developed that there was vendor's lien on this West Virginia land for two promissory notes, of $208 each, due September 26, 1919, and September 26, 1920, respectively, and payable to John W. Swick. The note for $30,000 was not paid when due, and the trustee, by direction of the Land Company, advertised the building for sale at public auction on December 18, 1919, under the provisions of the trust. On that day George filed his bill against the Land Company and Taggart as trustee, claiming in substance that he was not in default, and seeking a preliminary injunction and accounting. Taggart filed his answer on the same day, the sale was called off, and the court on the next day signed a preliminary restraining order. Upon the filing of an answer by the Land Company the court ordered the defendants enjoined pendente lite, provided petitioner file a bond in a sum named. One week later, no bond having been filed, the order granting an injunction pendente lite was vacated and set aside. Thereupon Taggart readvertised the property for sale on January 6, 1920, but owing to inclement weather it was necessary to postpone the sale until February 11th following.

On February 10th the appellee Chester A. Parvin filed a bill against the Land Company and Taggart as trustee, alleging that he had purchased the Barrister Building from George, discharged from the deed of trust provision for indemnity against defective title to the West Virginia land. There are other averments in the bill, but they need not be mentioned here. An order restraining the sale as advertised was prayed, and on the same day George filed an affidavit in support of Parvin's bill, in which he stated that the deed to Parvin had been placed in escrow pending release by the Land Company of the indemnity provision. A temporary restraining order was issued, the Land Company filed its answer, and thereupon the George and Parvin cases were consolidated, and the application of Parvin for an injunction pendente lite denied.

The property then was readvertised for sale on March 8, 1920. The Land Company bid $19,500 at the sale, but John J. Wescott, who "rents desk room" in Mr. Taggart's office, bid $20,000, and the property was struck off to him. Against the protest of the Land Company, and in disregard of the terms of sale, the trustee accepted Mr. Wescott's uncertified check for $5,000 cash deposit. Payment of this check

being refused, when presented the following day, the property again was advertised for sale on March 20, 1920, when it was bought by the Land Company for $5,000.

On April 3, 1920, the Land Company filed a cross-bill against George and Taggart as trustee, reciting that Taggart claimed commissions amounting to $2,750 for making the sale. George answered this cross-bill, alleging that he had been unable to deliver his deed to Parvin on account of the failure of the Land Company to file a release under the indemnity covenant in the third deed of trust. Later George filed an amendment to his original bill, seeking to charge the Land Company with the difference between its original bid of $19,500 and its subsequent bid of $5,000.

After trial the court ruled that the auditor was entitled to a commission of $250, to the cost of the advertised sales and counsel fees, and to commissions on the rents he had collected; that the Land Company was entitled to reasonable counsel fees as provided in the deed of trust; and that George was not entitled to the relief prayed, except as to an accounting. Thereupon Parvin sought and obtained leave to dismiss his suit. On November 4th the auditor filed his report, and, exceptions being filed, the case was brought here.

[1] There is no equity whatever in the bill filed by Mr. George. The trial court found, upon evidence of a satisfactory and convincing character, which we shall not review here, that the Land Company—

"never was in default; * * * that there never was a tender to the Forest Glen Land Company of any sum of money to get rid of these liens, which were on the West Virginia lands, and consequently that the Forest Glen Land Company was never in default."

In other words, it was the fault of George, and not of the Land Company, that the sale to Parvin was not consummated.

[2] The last sale was legal in every respect, and the Land Company is chargeable with no more than it then agreed to pay. The fact that it bid more at a previous sale is of no consequence. Had there been any equity in the property, it is reasonable to assume that Mr. George would have embraced the offer, made at the trial table, to take a deed to it by merely meeting the existing indebtedness to the Land Company. When this offer was made the trial court said:

"If anybody doubts the good faith of it, I will suspend long enough to allow a meeting of the Forest Glen people to authorize a deed of the property to Mr. George or to Mr. Parvin, upon the Forest Glen Land Company being absolutely cleared up on all indebtedness."

To this the president of the company made answer, "They can have it; we will be perfectly delighted." The court then said, "There is the good faith of it, and that offer stands until the close of this case;" and the president of the company added, "Yes; it stands, and we will be delighted if they will accept it." The attorney's fees were provided in the deed of trust and, not being unreasonable, the order allowing them will not be disturbed.

[3] This disposes of the questions raised by Mr. George, and we come now to the contentions of the trustee. On this branch of the case the trial court, Mr. Chief Justice McCoy, said:

"A trustee in a deed of trust claims a half commission on each of several attempted sales of the property calculated on the secured indebtedness and a full commission on the amount bid at the sale. The trustee advertised the mortgaged property for sale because of the mortgagee's default. Twice the sale was temporarily enjoined. A third day was fixed for the sale, but there was a postponement because of the weather conditions, and on the day to which the sale was so postponed the property was knocked down to the highest bidder, who, instead of depositing the amount called for by the advertisement, gave his check, which was dishonored. The result was a resale at which the mortgagee was the purchaser.

"The following are the provisions of the deed in relation to the payment of commissions: 'And upon payment of said note and the interest thereon, and all moneys advanced or expended as herein provided and all other proper costs, charges, expenses, commissions and half commissions and full compliance with the other conditions of this deed of trust at any time before the sale hereinafter provided for, to release and reconvey * * *' to the mortgagor. In case of default: '* * * And it shall be his, their, or his duty thereafter to sell, and, in case of any default of any purchaser, to resell the said described land and premises at public auction, upon such terms and conditions, in such parcels, at such time and place, and after such previous public advertisement as the party of the second part or the trustee acting in the execution of this trust shall deem advantageous and proper, * * * and to retain as compensation a commission of 5 per centum on the amount of said sale or sales. * * *' The deed further provides: 'And it is further agreed that if the said property shall be advertised for sale, as hereinbefore provided, and not sold, the trustees or trustee acting shall be entitled to one-half the commission above provided, to be computed on the amount of the debt hereby secured.'

"The contention of the trustee is that the meaning of the contract is that, if the property is advertised for sale and the sale does not take place on the day named in the advertisement, he is entitled to half commissions on the debt secured no matter what the reason for the failure to sell. The soundness of this contention of the trustee may be tested by applying to it the claim for a half commission based on the failure to sell because the weather was inclement. It goes without saying that the duty of the trustee was to get the best price obtainable. It is admitted by all concerned that this postponement was proper—that he would not have done his duty had he sold, or, to put it another way, that if the property had been sold, and brought a price apparently inadequate the sale would have been set aside. If the trustee's contention is sound, he would be entitled to a half commission on a sale so set aside, or, if literalness is to be pushed to the extreme, a full commission. The same construction would give the trustee a half or whole commission on the sale at which he took a check, instead of cash, for the deposit which the notice of sale said the successful bidder would be required to make; the result being the necessity for a resale. Had either of the injunctions been made permanent, the trustee would be claiming one or two half commissions, although the basis of the injunction might have been that the mortgage had been paid, and therefore that there should not have been an attempt to sell.

"The contention of the trustee leaves out of consideration the relations of the parties and the subject-matter of the contract. A sale under a deed of trust of the kind in question is the equivalent of a foreclosure by suit, and the advertisement is merely the beginning of a proceeding which, if rightly begun, must result in a sale, unless the debtor and creditor together prevent it, or unless the debt be tendered or paid; but in either event, under an agreement like the one here, the trustee could insist that his half commission be paid before withdrawing the property from sale. Where the sale is postponed merely, and the advertising is continued, or even discontinued and again resumed, the sale taking place finally because of the default which was the basis of the proceeding from the beginning, it cannot be said that the property was 'advertised for sale * * * and not sold,' within the necessary meaning of the contract. If the construction urged by the trustee were adopted trustees similarly situated would be placed in a position where their private

interests would tempt them to be unfaithful to their duties to the parties beneficially interested. The law does not encourage that sort of thing, and the contract should not be interpreted so as to create such a situation, unless it can mean nothing else. The use of the words 'half commissions' does not show that the trustee's contention is sound. The word 'commissions' is also used. The plural is employed, because the deed provides for a sale in 'parcels,' although apparently the property seems not to be susceptible to sale in parcels."

We agree with the reasoning and conclusion of the trial court. See McCullough, Trustee v. Pierce, 55 Md. 540. In our view, the provision that, if the property shall be advertised for sale and not sold, the trustee shall be entitled to one-half the commission to be computed on the amount of the debt, relates to cases where there is a redemption of the land, and where, therefore, one-half the amount of the debt is a fair basis upon which to compute the commission.

Decree affirmed, with costs.

Affirmed.