## ARUNDEL ASPHALT PRODUCTS, INC. *v.* MORRISON-JOHNSON, INC., ET AL.

[No. 112, September Term, 1969.]

*Decided December 15, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Clarence W. Sharp* for appellant.

*William Aleck Loker,* with whom were *Loker & Wigginton* and *Joseph D. Weiner* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

In 1965, Mr. and Mrs. Thomas J. LaRoque bought some 133 acres of land in St. Mary's County and began construction of St. Mary's Drag-O-Way, a drag strip for stock car racing. As it turned out, the early history of

the drag strip was enlivened by an unscheduled race of creditors which commenced before the strip was opened. The parties to this case both worked on the construction job: Arundel Asphalt Products, Inc. (Arundel) laid the footings and foundations for two of the buildings and did the paving; Morrison-Johnson, Inc., did the grading.

By the time the track opened in June of 1966, it was plagued with financial problems. There was a first mortgage to The Waldorf Bank with an unpaid balance of some $12,000; Morrison-Johnson held a second mortgage for some $47,000; Arundel, a third mortgage for some $72,000, and there was a clutch of judgments and mechanics' lien claims, which had been filed between August and November of 1966, the last claim being that filed by Arundel for its paving bill, it having previously accepted the third mortgage.

In March of 1967, Morrison-Johnson instituted proceedings for the foreclosure of its mortgage and widely advertised the sale. Arundel, in an effort to improve its position, immediately began proceedings for the foreclosure of the mechanics' lien claim which it had filed. A few months later, The Waldorf Bank's assignee started foreclosure proceedings.

Ultimately, it was the Bank which was the winner of the creditors' race. Morrison-Johnson's foreclosure proceeding was stayed by agreement. From an order of the Circuit Court for St. Mary's County dismissing Arundel's attempt to foreclose what it conceived to be a valid mechanics' lien claim, an appeal was taken to this Court which was in turn dismissed for failure to perfect the appeal, *Arundel v. LaRoque*, No. 172, September Term, 1968, dismissed 6 January 1969.

In September of 1967, the drag strip had been bought by Arundel at the foreclosure sale for $95,000. The present controversy relates to the distribution of the sale proceeds, and comes to us on appeal from the order ratifying the auditor's supplemental report.

Arundel is understandably unhappy with the auditor's reports. The first report, filed on 2 November 1967,

charged the sale proceeds with expenses of $7,217.65 (including commissions of $5,700) and with the amount necessary to satisfy The Waldorf Bank mortgage ($12,-940.53), leaving a balance of $74,841.82 for further distribution. The supplemental report, filed 13 September 1968, charged the remaining balance with amounts necessary to satisfy the Morrison-Johnson mortgage, $51,-559.30; five mechanics' liens which totalled $12,092.73, and a judgment for $10,932.50. There remained only $2,690.04 for distribution to Arundel in partial satisfaction of its third mortgage of some $72,000. We shall now turn to a consideration of the points raised by Arundel.

First, Arundel would have us reverse the order of the Circuit Court for St. Mary's County which dismissed its mechanics' lien claim and hold that Arundel should share ratably in the sale proceeds with the holders of other mechanics' liens. The short answer to this contention is that it is barred by *res judicata*. The basic rule of *res judicata* is that facts or questions which were in issue in a previous action and were there determined by a court which had jurisdiction of the parties and the subject matter are conclusively settled by a final judgment in the first case and may not again be litigated in a subsequent action between the same parties even though the subsequent suit takes a different form or is based on a different cause of action. *Pat Perusse Realty Co. v. Lingo*, 249 Md. 33, 35, 238 A. 2d 100 (1968); *A. B. Veirs, Inc. v. Whalen*, 256 Md. 162, 259 A. 2d 516 (1969); *Polansky v. Orlove*, 252 Md. 619, 251 A. 2d 201 (1969). When Arundel failed to perfect its appeal from the order of the Circuit Court dismissing the lien claim, the order was as much a final adjudication of Arundel's rights as it would have been if no appeal had been taken.

Next, Arundel questions the propriety of allowances of $4,752.50 and $926.45 to Patuxent Pump and Well Company and Kirby Glass Company, respectively, in satisfaction of their mechanics' lien claims. Arundel says both liens are invalid: Patuxent Pump's, because Patuxent Pump gave no notice of its intention to claim

a lien to Mrs. LaRoque who with her husband owned the drag strip as tenants by the entirety. In support of this contention, Arundel relies on Maryland Code (1957, 1968 Repl. Vol.) Art. 63, § 10 and not on Art. 63, § 11 (b), which we regard as controlling. Arundel challenges the validity of the lien claim of Kirby Glass because the claim identifies the property by reference to a deed conveying 6.4924 acres, on which no buildings have, in fact, been erected, while the buildings on which Kirby Glass worked were located on an adjacent tract of 126.4012 acres.

We find ourselves in the unhappy position of being unable to pass on these contentions one way or the other. The lien claims are not printed in the record extract. They are included in the transcript, but there is no evidence that any notice was given by Patuxent Pump [1] and no testimony fixing the location of the buildings where Kirby Glass worked. The points were apparently considered by the chancellor, who must have regarded the claims sufficient to support the auditor's allowance. *Schwartzman v. Payne,* 203 Md. 256, 100 A. 2d 23 (1953). There is nothing before us which would warrant disturbing the result reached below. Maryland Rule 886 a.

Arundel's final point relates to the allowance of fees and expenses by the auditor. It will be recalled that in March of 1967, Morrison-Johnson had instituted proceedings for the foreclosure of the second mortgage which it held on the drag strip. By agreement between counsel for the mortgagors and for the mortgagee, the foreclosure was stayed for 120 days. Before the expiration of the stay, The Waldorf Bank had commenced proceedings for the foreclosure of its mortgage, which was senior to that held by Morrison-Johnson. Ultimately the claim which Morrison-Johnson asserted against the proceeds of the foreclosure sale included not only the amount of the second mortgage debt, but $1,434.87 of expenditures, which included not only court costs and ex-

---

1. In fact, no notice may have been required if Patuxent Pump dealt directly with the LaRoques. See *Wilhelm v. Roe,* 158 Md. 615, 149 A. 438 (1930) ; Maryland Code, Art. 63, § 11.

pense in advertising incurred in connection with the incomplete foreclosure, but also trustees' commissions of $1,178.29. Arundel would have us reverse the allowance of these expenses.

Morrison-Johnson replies that entitlement to the allowance was a matter of contract, and refers us to paragraphs 6 and 7 of the LaRoques' deed of trust, which secured the deed of trust note:

> "6. *That if the said property shall be advertised for sale, as herein provided, and not sold, the Trustee or Trustees acting shall be entitled to one-half (½) the commission above provided,* to be computed on the amount of the debt hereby secured, and the same is hereby secured in like manner as other charges and expenses attending the execution of this trust, and shall bear full legal interest.
>
> "7. *That if any suit, action, or proceeding whatsoever shall be commenced* or prosecuted for the collection of the note, or any part of the note, or for the enforcement of any endorsement or endorsements thereof, or any other matters hereby secured, or in reference to the execution of the trust hereby created, or any of the trust or property of funds which may become part thereof, *he will pay all costs and charges and expenses of the same,* including all counsel and attorney's fees and charges, which shall also be deemed a charge attending the execution of this trust, be secured hereby as such and bear full legal interest." (emphasis added).

It is beyond question that Morrison-Johnson has the better of this argument, and that the expenses it incurred, including trustees' commissions of 2½%, were properly allowed by the auditor as part of the claim, since payment was clearly provided for by the deed of trust. *Hersh v. Allnutt,* 252 Md. 513, 518, 250 A. 2d 629 (1969).

The other objection raised by Arundel with respect to

the allowance of fees and expenses relates to the auditor's first report filed on 2 November 1967, following the foreclosure of The Waldorf Bank mortgage. In this report, commissions of $5,700 were allowed to the Bank's assignee who had brought the foreclosure proceeding, and were at the rate of 6% on a sale price of $95,000. Arundel refers us to Rule BR 7, which became effective in the Seventh Judicial Circuit on 15 July 1967:

> "In all sales of real, leasehold and tangible personal property made pursuant to an order of Court or subject to ratification by the Court, the compensation, *unless fixed by the instrument pursuant to which the sale is conducted,* allowed to the trustee or other fiduciary shall be as follows: (i) 10% on the first $3,000.00; (ii) 5% on the next $50,000.00; and (iii) 1% on the remainder." (emphasis added).

In the hearing on exceptions to the supplemental auditor's account, the auditor testified that he allowed commissions at the rate which was customary at the time the mortgage was executed, and support for this can be found in the mortgage to The Waldorf Bank executed on 12 April 1965, which called for the payment:

> "* * * a commission to the party making sale of said property equal to the commission allowed trustees for making sale of property by virtue of a decree of a Court having equity jurisdiction in the State of Maryland."

But this is peripheral to what we identify as the real issue before us. An examination of the docket discloses that the auditor's report which allowed the commissions which Arundel now challenges was filed on 2 November 1967; that Arundel filed no exceptions; and that the account was finally ratified on 20 November 1967. On 13 September 1968 the auditor's supplemental report was filed, and Arundel filed its exceptions on 27 September. While the exceptions were styled "exceptions to auditor's

report and supplemental auditor's report," it is significant that the exceptions contain no reference to the rate of commissions allowed in the first report, or indeed to anything else contained in the first report. The question was raised for the first time[2] at the hearing on exceptions to the supplemental report. An examination of the colloquy between counsel and the court makes it quite plain that the court took the view that it was too late for the question to be raised by way of exception to the supplemental report. This may account for the absence of any reference to it in the opinion filed below.

We are not to be understood as saying that the auditor was either right or wrong in allowing commissions in the amount of $5,700. What we are saying is that when Arundel posed the question at the hearing in November, 1968, it raised the question more than a year after the filing of the report and not by the filing of formal exceptions within the 15 days allowed by Rule 595 g.

At argument, we reserved decision on the appellees' motion to dismiss under Rule 835 b (5) because of Arundel's failure to comply with Rule 828 b 1, which requires that the record extract contain "such parts of the record as may reasonably be necessary for the determination of the questions presented by the appeal." As we have indicated, although the record is too meager to permit the determination of some of the points raised, *compare Jacobs Instrument Co. v. Comptroller*, 216 Md. 290, 140 A. 2d 285 (1958) with *El-Masri v. State*, 228 Md. 114, 178 A. 2d 407 (1962), we have chosen to deal with the questions to the extent that we were able. *Anderson v. Hull*, 215 Md. 476, 138 A. 2d 875 (1958).

> *Order affirmed, costs to be*
> *paid by appellant.*

---

2. There is a suggestion that the problem was discussed informally with the auditor prior to the filing of the first report.