# LAKREST DEVELOPMENT COMPANY, INC.
## *v.* EISELE, ET AL.

[No. 305, September Term, 1969.]

*Decided May 7, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Morris Topf* for appellant.

*Carlyle J. Lancaster,* with whom were *Welsh & Lancaster* and *Haislip & Yewell* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court. BARNES and FINAN, JJ., dissent. Dissenting opinion by BARNES, J., in which FINAN, J., concurs, at page 51 *infra.*

In this appeal, the appellant, Lakrest Development Company, Inc. (Lakrest) challenges the propriety of the granting of a summary judgment by the Circuit Court for Prince George's County (Parker, J.) for $5,-130.00 in favor of the appellees, Maryland State Savings & Loan Association (Savings Association), the successor beneficiary under a deed of trust executed between Lakrest as grantor and Clifton M. Eisele, Jr. and Carlyle J. Lancaster, grantees and trustees named in the deed of trust (the trustees), representing the total amount of two one-half commissions of $2,565.00. Lakrest does not challenge the allowance of *one* of the two one-half commissions claimed by the trustees, but does challenge the allowance of the second one-half commission.

Lakrest, on December 31, 1964, executed the deed of trust on two tracts of land in Prince George's County of 29.017 acres and 5.871 acres, respectively, to secure the Savings Association for the repayment of $140,-000.00. This deed of trust, in the conventional form in use in Prince George's and Montgomery Counties, provides for the advertisement and sale of the subject properties by the trustees in the event of a default and contains the following provision:

"10. That if the property on which this trust is secured shall be advertised for sale hereunder and not sold, the Trustees acting herein shall be entitled to one-half of the commission as

herein provided, computed on the amount of the debt hereby secured, and the same is hereby secured in like manner as any other charge and expense attending the execution of this trust and shall bear full legal interest."

There was also a provision in the deed of trust that upon a *sale* of the subject property the commission of the trustees shall be 5% of the amount of the sale.

After the execution and recordation of the deed of trust, Lakrest defaulted in the payment of the indebtedness and the Savings Association instructed the trustees to proceed to advertise and sell the subject property pursuant to the provisions of the deed of trust. The trustees advertised the property for a sale to be held on March 25, 1969. On the day of the sale the president of Lakrest appeared at the place of the sale and requested the president of the Savings Association not to proceed with the sale of the property at that time, representing that sufficient money could be raised to save the property from foreclosure. The president of the Savings Association voluntarily agreed to call off the sale, the trustees acquiesced in this decision, and the sale was postponed. Lakrest, however, failed to produce the necessary amount of money to prevent foreclosure, and the trustees, on instructions of the Savings Association, for the second time advertised the subject property for sale. This sale was to be held on April 22, 1969. Shortly prior to the sale on April 22, Lakrest filed a petition for an injunction to stay the foreclosure and on April 21, 1969, the Circuit Court for Prince George's County passed an order enjoining the sale.

Thereafter, as a result of conversations between counsel for Lakrest and for the trustees, a hearing was not held in the injunction proceedings, which were, by agreement of counsel, dismissed with prejudice. It was recited in the order for the dismissal that Lakrest would waive any objection it might have to a readvertisement of the subject property and that it agreed to "a re-advertise-

ment in precisely the same form, excepting only the sale date, as previously utilized by the Defendant-Trustees." For the third time, the trustees proceeded to advertise the subject property for sale, the date of this last advertised sale to be May 20, 1969. On May 19, 1969, Lakrest paid the balance of the indebtedness,[1] including expenses, so that the property was not sold on May 20. The trustees charged two one-half commissions in the amount of $2,565.00 each, calculated in accordance with the provisions in the deed of trust, in connection with the proposed sale of April 22, 1969, stopped by the injunction, and with the proposed sale of May 20, 1969, stopped by Lakrest's payment of the indebtedness, including expenses.

At the settlement, Lakrest permitted the settlement attorney to retain the amount of two one-half commissions, aggregating $5,130.00 in amount, under protest, and thereafter filed an action at law against the Savings Association and the trustees to recover the $5,130.00. The trustees filed a motion for summary judgment, with supporting affidavits setting out the above and other facts, alleging that there was no dispute in regard to any material facts and that they were entitled to judgment as a matter of law. After considering the affidavits and counter-affidavits of Lakrest as well as argument of counsel, Judge Parker granted summary judgment in favor of the defendants for costs.

Lakrest conceded in its brief and at the argument before us that the trustees are entitled to *one* one-half commission, but that "the imposition of the second commission is excessive and returnable to the property owner."

The result reached below must be examined in the light of our prior decisions. Our predecessors have held that in the absence of a binding provision in a mortgage or deed of trust covering the payment of commissions, no commissions are payable on the sale of the property, *Johnson v. Glenn*, 80 Md. 369, 30 A. 993 (1895) ; *Rap-*

---

1. Which by this time had been reduced to $102,605.08.

*panier v. Bannon,* 66 Md. xii (unreported), 8 A. 555, at 569-570 (opinion) (1887) and see also *Goldberg v. Price,* 218 Md. 602, 147 A. 2d 745 (1959) and *Griffith v. Dale,* 109 Md. 697, 72 A. 471 (1909). It has also been held that one-half commissions are not payable, unless the mortgage or deed of trust so provides, when the property is redeemed by the mortgagor after advertisement but before sale, *Dorsey v. Omo,* 93 Md. 74, 48 A. 741 (1901). For the procedural similarities in the enforcement of deeds of trust and mortgages, see Maryland Rules, Subtitle W, and particularly Rule W 77 a; *LeBrun v. Prosise,* 197 Md. 466, 473-74, 79 A. 2d 543 (1951); *Manor Coal Co. v. Beckman,* 151 Md. 102, 115-16, 133 A. 893 (1926).

As a consequence, it is not uncommon to find in deeds of trust and mortgages containing a power of sale or an assent to a decree provisions comparable to that found in paragraph 10 of the Lakrest deed of trust. Such a provision is obviously designed to compensate trustees and assignees for the time and effort expended in instances where the debt is satisfied before foreclosure and the property is withdrawn from the sale. *Hersh v. Allnutt,* 252 Md. 513, 250 A. 2d 629 (1969).

We read the Lakrest deed of trust provision, "That if the property on which this trust is secured shall be advertised for sale hereunder and not sold * * *," as meaning that entitlement to one-half commissions is conditioned on a failure to make the sale, see *Arundel Asphalt v. Morrison-Johnson, Inc.,* 256 Md. 170, 175, 259 A. 2d 789 (1969) and not on the number of sale dates which may have been advertised. See also *George v. Forest Glen Land Co.,* 52 App. D.C. 73, 281 F. 577 (1922), where a commission was denied when the property was advertised, but the sale was postponed at the instance or fault of the trustee.

The result which we reach engenders no inequity. On the one hand, readvertisement imposes no particularly onerous burden on the trustees; on the other, the deed of trust was a printed form provided by the lender and incorporates terms generally imposed on borrowers. We

cannot say that paragraph 10 is wholly free from ambiguity. It is hardly necessary to reiterate the rule that the provisions of an ambiguous instrument should be strictly construed against the one who prepared it. *Kelley Constr. Co. v. Washington Suburban Sanitary Comm'n,* 247 Md. 241, 250, 230 A. 2d 672 (1967) ; *Cadem v. Nanna,* 243 Md. 536, 544, 221 A. 2d 703 (1966).

Nearly a century ago, in *McCullough v. Pierce,* 55 Md. 540 (1881), our predecessors, in rejecting the idea that a trustee selling under a court decree could charge commissions on the amount of a sale reported to a purchaser who defaulted, said:

> "Any other rule would operate unjustly, and would offer a temptation to trustees to make sales to irresponsible bidders, at extravagant prices without any reasonable expectation that the terms of sale will be complied with, if commissions were to be allowed upon the whole price at which every sale may be made and reported, without regard to the amount realized therefrom.* * *" 55 Md. at 546.

Similar hazards might be inherent in holding that one-half commissions could be charged each time a property was advertised, but not sold.

In *George v. Forest Glen Land Co., supra,* the Court relied on *McCullough v. Pierce, supra,* and said:

> "* * * If the construction urged by the trustee were adopted [that one-half commissions were payable each time the property was advertised] trustees similarly situated would be placed in a position where their private interests would tempt them to be unfaithful to their duties to the parties beneficially interested. The law does not encourage that sort of thing, and the contract should not be interpreted so as to create such a situation, unless it can mean nothing else." 281 F. at 580-81.

On the record before us, we are satisfied that the trustees are entitled to but a single commission of $2,-565.00. We would not necessarily reach the same result if a second and wholly new foreclosure proceeding had been instituted after the property had been withdrawn from sale. Compare *Walsh v. Jefferson Fed. Sav. & Loan Ass'n,* 216 Md. 131, 139 A. 2d 847 (1958).

> *Judgment reversed, case remanded for entry of judgment for $2,565.00 and costs in favor of Lakrest Development C o m p a n y, Inc., costs of this appeal to be paid by appellees.*

BARNES, J., dissenting:

I dissent because, in my opinion, paragraph 10 of the deed of trust set forth in full in the majority opinion is clear and unambiguous and unless elements of estoppel or acquiescence by the trustees are present, it permits the trustees to collect a one-half commission every time the "property on which this trust is secured shall be advertised for sale hereunder and not sold." This language means exactly what it says and indicates the intention of the parties to the deed of trust that whenever the subject property "shall be advertised for sale hereunder" and shall not be sold pursuant to the advertisement of sale, the trustees are entitled to a one-half commission.

It will be observed that there is *no limitation* in the language of paragraph 10 which limits the *number of times* the trustees may during the term of the deed of trust advertise the subject property for sale if there has been a default pursuant to the provisions of the deed of trust. The language thus means that every time the subject property is advertised for sale and not sold, the trustees—if not estopped by their own act or agreement —may collect a one-half commission. The intention of

the parties to the deed of trust is clearly expressed in the language used and, not being ambiguous, is not, in my opinion, subject to interpretation by us. As Judge Smith, for the Court, aptly stated in *Devereux v. Berger*, 253 Md. 264, 269, 252 A. 2d 469, 471 (1969) :

> "Maryland contract law is to the effect that where a contract is plain as to its meaning, there is no room for construction and it must be presumed that the parties meant what they expressed." (Citing three prior Maryland cases)

The majority opinion construes the provision to mean that the right of the trustees to the one-half commissions is conditioned "on a failure to make the sale * * * and not on the number of sale dates which may have been advertised." The difficulty with this construction, in my opinion, is that the language does not require construction—it being clear and unambiguous—and the majority's construction places a condition in paragraph 10 which the language does not permit and the parties did not state. If the parties had intended the meaning of the language of paragraph 10 to be that as construed by the majority of the Court, it would likely have read:

> 10. That if the property on which this trust is secured shall be advertised for sale hereunder *and regardless of the number of times advertised for sale and shall not ultimately be sold,* etc.

This italicized language, however, is not in paragraph 10 and, in the absence of such language, there is no limitation upon the number of times the subject property may be advertised by the trustees and if not sold on the day and at the time and place of the advertised sale (in the absence of an estoppel by the conduct of the trustees or their agreement), the trustees may collect a one-half commission.

The majority indicates that the result reached by it "engenders no inequity," suggesting that readvertise-

ment imposes no particularly onerous burden on the trustees and that the climate in which deeds of trust and mortgages are drafted makes "bargaining by a borrower. . .next to impossible." With respect, in my opinion, these observations beg the question. There is no suggestion in the record that the deed of trust was not valid in every way and that the borrower lawfully agreed to its terms. The *amount of work* by the trustees in the readvertisement is not the measure of allowance of one-half commissions but rather the fact of a proper advertisement for sale and no sale in accordance with its terms. It may be observed that in the second readvertisement for sale on April 22, 1969, Lakrest filed a suit for an injunction to prevent the sale, obtained an order of court restraining it and later entered into a written agreement with the trustees that no hearing should be held, the injunction suit be dismissed with prejudice and thereafter, the trustees should, for the third time, readvertise the property for sale "in precisely the same form, excepting only the sale date, as previously utilized by the Defendant-Trustees." It is rather apparent from this that the action by the debtor to enjoin the sale had little, if any, merit and apparently was a device to obtain additional time to pay the debt. There is little question that this action by the debtor required the performance of substantial legal work by the trustees in connection with the injunction suit, agreement, etc. It appears that not only does the language of paragraph 10 permit the payment of a one-half commission for this episode but that every equity is in favor of compensation of the trustees in this situation.

The third readvertisement of the subject property was thereafter prepared and provided for a proposed sale on May 20, 1969. The trustees prepared the new advertisement of sale, were required to see that it conformed to the previous readvertisement except the date of sale, arranged for the auctioneer and generally performed the usual services involved in preparing for the sale. Here again, the sale was not made after that third readvertise-

ment because of the action of Lakrest in paying off the indebtedness, including expenses. I can find no "inequity" in allowing the trustees a second "one-half commission" for this third readvertisement and failure to make sale caused by the action of the debtor and, as heretofore indicated, it comes within the precise language of the provisions of paragraph 10. This third advertisement and no subsequent sale because of payment by the debtor comes within the ambit of our decision in *Hersh v. Allnutt,* 252 Md. 513, 250 A. 2d 629 (1969), cited in the majority opinion, in which we held that when a mortgage provides for the payment of a one-half commission if the mortgaged property is advertised for sale but not sold (the provision being substantially the same as the one in the instant case), the attorney named in the mortgage was entitled to charge and collect that commission when he had advertised the mortgaged property for sale but the mortgagor paid off the mortgage indebtedness prior to the sale. Judge Marbury, for the Court, stated:

> "Appellants [the mortgagors] insist that appellees' attorney had no right to demand a commission when they belatedly offered to make interest payments after the property had been advertised for sale. This contention has no merit since the *mortgage specifically provided that such a commission be paid.*"
> (Emphasis supplied.)
> (252 Md. at 517, 250 A. 2d at 632).

In its brief and at the argument of this case before us, Lakrest placed its entire reliance on the decision of the Court of Appeals of the District of Columbia in 1922 in the case of *George v. Forest Glen Land Co.,* 52 App. D.C. 73, 281 F. 577 (1922). In my opinion, this reliance is misplaced. In the *George* case, the trustee claimed one-half commission in several situations in which the property had been advertised but not sold. In two instances the proposed sale had been temporarily enjoined since

the required bonds had not been filed; in another instance the proposed sale was postponed by the trustee because of inclement weather; and in another instance a sale was held, but the trustee, contrary to the terms of sale, accepted an uncertified check, later dishonored, as the down payment. In each of the situations in which the sale was not held, the failure to hold the sale resulted from the *voluntary actions of the trustee*. If the trustees in the present case had claimed a one-half commission on the first proposed sale, in which the trustees had acquiesced in the postponement of the sale upon the request of the creditor, it could well be argued that the decision in the *George* case would be authority for disallowing that one-half commission. The majority properly, in my opinion, did not decide this question, inasmuch as the trustees do not claim that they are entitled to such a one-half commission. In the present case, however, unlike the *George* case, the two proposed sales in question were stopped by the sole action of Lakrest, first by injunction and secondly by payment of the indebtedness and incidental expenses. Both of these causes of postponement were without the consent or beyond control of the trustees. I do not understand that the majority relies upon the *George* case as supporting its decision in the instant case.

In my opinion, Judge Parker properly rendered a summary judgment for the two one-half commissions and I would affirm that judgment.

I am authorized to state that Judge Finan concurs in the views set forth herein.