## BURROUGHS CORPORATION *v.* CHESAPEAKE PETROLEUM AND SUPPLY COMPANY, INC.

[No. 95, September Term, 1977.]

*Decided April 21, 1978.*

The cause was argued before SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Avis E. Black,* with whom were *Ralph N. Albright, Jr.,* and *John Edward Powell* on the brief, for appellant.

*Allan Sosslau* for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The dispute in this case arises out of a contract to sell a computer and certain computer programs. The facts are as follows. By an "Equipment Sale Contract" signed on April 2, 1971, the plaintiff-appellee Chesapeake Petroleum and Supply Company ordered from the defendant-appellant Burroughs Corporation one L-5000 magnetic record computer and "application software." An "Addendum for Application Software Support," signed by both parties on the same date and incorporated into the Equipment Sale Contract, described the software as computer programs for "billing, A/R, Inventory, cash receipts, aging, and statement head-up." Both the Equipment Sale Contract and the Addendum were prepared by Burroughs's salesman. The back of the Equipment Sale Contract contained fourteen paragraphs. One of the paragraphs waived all of the purchaser's rights to damages under the contract and another disclaimed all warranties, express or implied. Chesapeake financed a portion of the purchase price through a third company, the Weston Leasing Company. By the terms of a lease dated October 1971, Weston paid the cash balance due to Burroughs, and Chesapeake agreed to lease the equipment from Weston over a period of sixty months.

Burroughs was to deliver the computer, fully-programmed, to Chesapeake by September 1, 1971. Chesapeake did not actually receive any equipment until mid-October. Further, the computer did not perform all of the functions specified

in the contract. During the period from October 1971 until the spring of 1974, Chesapeake was only able to use the computer to perform simple debit and credit posting, and Burroughs attempted to correct the other defective programs.

In the spring of 1974, Chesapeake decided to stop using the Burroughs computer and bought another machine which performed satisfactorily. Chesapeake then filed suit against Burroughs on June 6, 1974. In Counts I and II of its declaration, Chesapeake alleged that Burroughs had breached the contract and its warranty under the contract. Chesapeake claimed that, in signing the contract, it had relied on prior oral representations made by agents of Burroughs, and on information printed in Burroughs's sales literature, to the effect that the specific computer and software purchased would fulfill Chesapeake's needs. Chesapeake asserted that Burroughs failed to provide equipment and programs adequate to perform the functions listed in the Addendum. In Count III, Chesapeake alleged negligence by Burroughs in designing, programming, and installing the equipment. Later, Chesapeake amended its declaration by adding Count IV, in which Chesapeake alleged fraudulent misrepresentation by Burroughs as to the capabilities of the equipment sold. Each count contained a prayer for $200,000.00 in damages.

This case was tried before the Circuit Court for Montgomery County (Shure, C. J.). At trial both corporations offered testimony by their employees, and Chesapeake also called two expert witnesses. Chesapeake attempted to prove, by its employees' testimony, that Burroughs's salesman represented to Chesapeake that the L-5000 computer plus the six programs would adequately meet all of Chesapeake's accounting needs and that, when delivered, the equipment failed to perform satisfactorily the tasks designated in the Addendum. Chesapeake also offered testimony by two computer experts to the effect that the Burroughs programs were defective and that it would have been a relatively easy task, by industry standards, to program the L-5000 correctly, according to the contract specifications. Burroughs introduced testimony by its salesman and supervisory staff

in an effort to prove that the programs did eventually work and to show the manner in which the sale to Chesapeake was made.

In an opinion and order dated March 18, 1977, the circuit court gave judgment for Chesapeake, awarding $30,000.00 in damages. With respect to Counts I and II, the court found that Burroughs had breached the contract and its warranty under the contract because the equipment sold to Chesapeake did not perform in the manner represented to Chesapeake. The trial court went on to hold that it would be unconscionable to enforce the waiver of damages provision printed on the reverse side of the contract. Alternatively, the trial court held that none of the conditions printed on the reverse side of the contract were part of this particular agreement: "The court notes also that on the first page of the equipment sale contract it states: 'Terms and conditions on reverse side are part of this security agreement,' when in fact there was no such security agreement involved." Since Chesapeake financed its purchase of the equipment through Weston Leasing Company, not through Burroughs, the trial court concluded that there was no security agreement between Chesapeake and Burroughs. Therefore, the waiver of damages and the disclaimer of warranties printed on the reverse side of the agreement were not part of the contract between the parties in this case. The trial court dismissed Count III because no duty or obligation could be found to exist independent of the contract, and the court directed a verdict for Burroughs on Count IV (fraud). The damage award included the cost of the machine less salvage value, the cost for an expert consultant, the value of the useless equipment, and miscellaneous labor expenses.

Burroughs took an appeal to the Court of Special Appeals, and this Court issued a writ of certiorari before any proceedings in the Court of Special Appeals.

Burroughs presents three arguments on appeal. *First,* Burroughs challenges the trial court's holding that enforcement of the limitation of damages provision, printed on the reverse side of the contract, would be unconscionable under § 2-302 of the Maryland Uniform Commercial Code,

Maryland Code (1975), § 2-302 of the Commercial Law Article. However, Burroughs fails to challenge the trial court's alternate holding that the provisions printed on the back of the form contract were not part of the agreement in this case. *Second,* Burroughs argues that the admission of extrinsic evidence as to oral warranties contradicted the disclaimer of warranties clause in the contract. This contradiction, Burroughs argues, violates the parol evidence rule codified in § 2-202 of the Maryland Uniform Commercial Code, Code (1975), § 2-202 of the Commercial Law Article. *Finally,* Burroughs contends that the trial court's finding that Burroughs did not in fact supply the goods as promised under the contract was clearly erroneous under Maryland Rule 886.

As we have previously pointed out, Burroughs does not in any manner attack the trial court's alternative holding, that the printed provisions on the back of the contract form were not part of the actual contract between Burroughs and Chesapeake because no security agreement was involved. But it would have been necessary for Burroughs, in order to succeed on this appeal, to challenge successfully the trial court's alternate holding. If the limitation on damages and disclaimer of warranties are not part of the contract, it is immaterial whether the trial judge was correct in finding unconscionableness.

However, even if Burroughs had contested on appeal the trial court's alternate holding, we would agree with the trial court that the printed provisions on the reverse side were not part of the contract between Burroughs and Chesapeake. This seems clear from the language of the contract itself. As stated previously, a clause on the front of the printed contract indicated that the printed provisions on the reverse side were operative only if the document were a security agreement. However, no financing was arranged between Burroughs and Chesapeake. After giving Burroughs a cash down payment, Chesapeake financed the balance of its purchase of the equipment through the Weston Leasing Company. The spaces on the contract form for installment payments and financing charges were left blank. It appears that the printed form was intended for use either as a sales contract, a security

agreement, or both, depending upon how the contract form was completed. We can only conclude that the printed form contract was completed in such a way that only a contract of sale was involved, and thus the provisions on the reverse side were inapplicable.

At the very least, the Equipment Sale Contract presents a facial ambiguity, and the trial court did admit testimony as to discussions between Burroughs's and Chesapeake's representatives to explain the provision. That testimony clearly supported the conclusion that the clauses printed on the back side of the contract document were not intended to be part of the agreement. In this regard, we note the settled rule, set forth in *Eastover Stores, Inc. v. Minnix,* 219 Md. 658, 666, 150 A. 2d 884 (1959):

> "[P]arol evidence is inadmissible to vary, alter or contradict a writing which is complete and unambiguous, where no fraud, accident or mistake is claimed . . . ; but where doubt arises as to the true sense and meaning of the words themselves or difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and determined by evidence *dehors* the instrument."

*See, e.g., Snider Bros., Inc. v. Heft,* 271 Md. 409, 419, 317 A. 2d 848 (1974); *Missler v. Anne Arundel County,* 271 Md. 70, 80, 314 A. 2d 451 (1974); *Delmarva Drill Co. v. Tuckahoe,* 268 Md. 417, 426, 302 A. 2d 37 (1973); *Rice v. Rice,* 246 Md. 212, 216-217, 227 A. 2d 742 (1967); 3 *Corbin on Contracts* § 579, at 412 (1960 ed.). Admission of extrinsic evidence on this question was also proper under the Maryland Uniform Commercial Code. *See* § 2-202; § 1-201(3); § 1-205. *See also* W. Hawkland, *Sales and Bulk Sales* 58-59 (3d ed. 1976); 2 *Williston on Sales* § 13-9, at 87 (4th ed. 1974).

Moreover, the contract documents in this case were prepared and completed solely by agents of Burroughs. It is a basic principle of contract law that, in construing the language of a contract, ambiguities are resolved against the draftsman of the instrument. *See, e.g., McKoy v. Aetna Cas.*

*& Sur. Co.,* 281 Md. 26, 31, 374 A. 2d 1170 (1977); *Canaras v. Lift Truck Services,* 272 Md. 337, 356, 322 A. 2d 866 (1974); *Lakrest Dev. Co. v. Eisele,* 258 Md. 45, 50, 265 A. 2d 187 (1970).

Since we agree with the trial court that the provisions printed on the back of the form contract were not part of the agreement between Burroughs and Chesapeake, it is unnecessary for us to reach Burroughs's second contention, namely that, because of the disclaimer of warranties clause on the reverse side, parol evidence was inadmissible to show what Burroughs had warranted regarding the computer and software. The disclaimer of warranties clause was simply not part of this contract.

We also hold that the trial court's finding of fact, that Burroughs did not supply the goods as promised and warranted under the contract, was not clearly erroneous under Rule 886. In its brief, Burroughs concedes that the programs were delivered late and that they did not work properly when they were delivered. Despite repeated attempts over a long period, Burroughs did not effectively remedy the malfunctions. Ample testimony by expert witnesses and Chesapeake's employees regarding the poor performance of the programs corroborates the trial court's finding.

*Judgment affirmed.*
*Appellant to pay costs.*